763 So.2d 575 (2000)
Ben GUITREAU
v.
Andrew KUCHARCHUK, M.D.
No. 99-C-2570.
Supreme Court of Louisiana.
May 16, 2000.
*576 B. Scott Cowart, Baton Rouge, D. Blayne Honeycutt, Denham Springs, Donald T.W. Phelps, Dewey Michael Scandurro, Baton Rouge, Counsel for Applicant.
Dexter Anthony Gary, William Anthony Stark, Houma, Counsel for Respondent.
Amy Waters Phillips, Baton Rouge, Deborah Inchaustegui Schroeder, Metairie, Counsel for Louisiana State Medical Society and Louisiana Medical Mutual Insurance Co. (Amicus Curiae).
JOHNSON, Justice.[*]
Plaintiff, Ben Guitreau, filed a medical malpractice action, claiming that the surgery performed on his knee by defendant, Dr. Andrew Kucharchuk, fell below the acceptable standard of care for orthopedic surgeons. In LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, "we save[d] for another day the question of whether the medical malpractice victim gets any period of time that remains unused at the time of the filing of the request for the medical review panel when the ninety-day period of suspension after the decision of the medical review panel is completed." LeBreton, 714 So.2d 1229 n. 5. The First Circuit Court of Appeal has answered the question in the affirmative, and we granted this writ of certiorari to determine the accuracy of that court's decision. We affirm the court of appeal's decision and hold that when the ninety-day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to count the period of time, under LSA-R.S. 9:5628, that remains unused at the time the request for a medical review panel is filed. We also hold that the court of appeal did not err in finding that prescription commenced on November 23, 1992 and that plaintiff's action had not prescribed. Accordingly, we affirm the court of appeal's decision and remand this matter to the trial court.

FACTS AND PROCEDURAL HISTORY
On August 11, 1992, plaintiff, Ben Guitreau, underwent orthopedic surgery on his left knee. The surgery was performed by Dr. Andrew Kucharchuk. After surgery, plaintiff attended physical therapy and remained under Dr. Kucharchuk's care. Plaintiff testified that Dr. Kucharchuk informed him that he was doing well and never indicated that there was anything wrong. However, plaintiff alleges that, following the surgery, his knee continued to swell, and his condition worsened.
Because plaintiff's knee remained swollen, his employer became concerned that he was unable to return to work and referred him to the company physician, Dr. John Fraiche. Dr. Fraiche examined *577 plaintiff and then referred him to Dr. Brian Griffith, an orthopedic surgeon. On October 30, 1992, plaintiff was examined by Dr. Griffith. Plaintiff presented Dr. Griffith with a copy of the videotape of the surgery performed by Dr. Kucharchuk. On November 2, 1992, Dr. Griffith's notes reflect that the "tape was inconclusive as to how much of [the damage] was removed or how completely." The doctor also noted that plaintiff had "significant damage" to his knee. Plaintiff visited Dr. Griffith again on December 16, 1992. From that visit, Dr. Griffith noted that he "talked with [plaintiff] about his alternatives." Plaintiff testified that he became aware of the need for additional surgeries around "the end of November or early December."
Plaintiff testified that, on the suggestion of his cousin, he decided to consult an attorney. On November 23, 1992, plaintiff visited an attorney and signed a medical authorization form. He was informed by the attorney that an independent orthopedic surgeon would review his medical records.
On August 2, 1993, plaintiff filed a claim with a medical review panel. The panel rendered an opinion in plaintiff's favor on March 10, 1995, and plaintiff received the opinion on March 14, 1995. On May 19, 1995, plaintiff filed a petition for damages in the Twenty-first Judicial District Court, alleging Dr. Kucharchuk's conduct in performing the surgery fell below the acceptable standard of care for orthopedic surgeons. Plaintiff further alleged that the surgery failed to correct his knee problems and caused additional damage to his knee.
On August 25, 1995, plaintiff filed a First Supplemental and Amending Petition, naming Southeastern Orthopedics, Inc. as an additional defendant. Plaintiff alleged that Southeastern Orthopedics was a professional medical corporation established by Dr. Kucharchuk and that Dr. Kucharchuk was in the course and scope of his employment with the corporation at the time of the alleged malpractice. Neither defendant was served with plaintiff's original or supplemental petition until September 15, 1995.
Both defendants filed a declinatory exception of improper venue, asserting that Dr. Kucharchuk was a resident and domiciliary of East Baton Rouge Parish and that his medical office was located in East Baton Rouge Parish. Defendants further alleged that plaintiff's surgery was performed at the Medical Center of Baton Rouge which is also located in East Baton Rouge Parish. Furthermore, Southeastern Orthopedics, Inc. was a Louisiana Corporation with its registered office in East Baton Rouge Parish. Following a hearing, the trial court maintained the exception and transferred the case to the Nineteenth Judicial District Court.
After the case was transferred, defendants filed a peremptory exception of prescription, alleging that prescription commenced on August 11, 1992, the date of plaintiff's surgery. Defendants also alleged that plaintiff filed suit in an improper venue and did not serve defendants until September 15, 1995. The trial court maintained the exception, finding that plaintiff's action had prescribed. The trial court specifically found that plaintiff had sufficient information to make a claim for malpractice as of November 2, 1992, the date Dr. Griffith viewed the videotape and noted in plaintiffs records that Dr. Kucharchuk had performed plaintiff's surgery incorrectly. The trial court allowed plaintiff the benefit of the unused prescriptive period when plaintiff requested the medical review panel and concluded that plaintiff's suit was prescribed by three days when Dr. Kucharchuk was served on September 15, 1995 because plaintiff had received notice of the panel's decision on March 14, 1995.
Plaintiff appealed to the First Circuit Court of Appeal which reversed the trial court's ruling. Guitreau v. Kucharchuk, 97-0169 (La.App. 1 Cir. 2/20/98), 710 So.2d 378 (Unpublished). After conducting a de novo review of the record, the appellate *578 court found that the petition was not prescribed on its face and that defendants failed to meet their burden of proving that the action had prescribed because they failed to prove when plaintiff discovered his medical malpractice claim. The court of appeal concluded that prescription commenced on November 23, 1992, the date upon which plaintiff discovered his malpractice claim and consulted an attorney and allowed plaintiff the benefit of the unused prescriptive period when the medical review panel was instituted on August 2, 1993. The court found that prescription ran from November 23, 1992 until the claim was presented to the medical review panel on August 2, 1993, and at that point, the prescriptive period was suspended until ninety days following March 14, 1995, the date plaintiff received the medical review panel's opinion.
Defendants filed an application for certiorari with this court, urging the court to reinstate the trial court judgment. Defendants later filed a supplement to the writ application in light of this court's decision in LeBreton. This court granted the writ and remanded the case to the First Circuit Court of Appeal for a decision concerning the question left open in footnote 5 of the LeBreton case, that is, whether the medical malpractice victim is allowed to count any period of time that remains unused at the time of the filing of the request for the medical review panel when the ninety-day period of suspension after the decision of the panel is complete. Guitreau v. Kucharchuk, 98-0756 (La.11/6/98), 726 So.2d 915.
On remand, the court of appeal concluded that a patient is entitled to the remaining days of the prescriptive period that are unused prior to filing a claim with the medical review panel. The appellate court again concluded that plaintiff's suit was timely because prescription did not commence until November 23, 1992. Guitreau v. Kucharchuk, 97-0169 (La.App. 1 Cir. 7/29/99), 740 So.2d 232.
Once again, defendants filed an application for certiorari with this court. By order dated November 24, 1999, we granted their writ application. Guitreau v. Kucharchuk, 99-2570 (La.11/24/99), 750 So.2d 976.

DISCUSSION
In their first assignment of error, defendants argue that the court of appeal erred in ruling that plaintiffs petition, which was not served within ninety days after plaintiff received the medical review panel's decision, was timely.
LSA-R.S. 9:5628 provides that all actions against physicians arising out of patient care must be filed within one year from the date of the alleged act or within one year from the date of the discovery of the act. The Medical Malpractice Act provides, in pertinent part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted ... until ninety days following notification, by certified mail ... to the claimant or his attorney of the issuance of the opinion by the medical review panel....
LSA-R.S. 40:1299.47(A)(2)(a). Article 3472 of the Louisiana Civil Code provides:
The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension.
The explicit language of LSA-R.S. 40:1299.47(A)(2)(a) provides that the time for filing a suit is suspended during the pendency of the determination by the medical review panel until ninety days following notification of the panel's decision by certified mail. LSA-C.C. art. 3472 makes it clear that the period of suspension is not counted. In LeBreton, we noted:
Suspension of prescription constitutes a temporary halt to its running. One doctrinal source aptly describes suspension as a period of time in which prescription slumbers. Prescription is suspended for *579 as long as the cause of suspension continues. After the cause for the suspension ends, the prescriptive time begins running and the "time which precede[d] the suspension is added to the time which follows it to compose the necessary period; only the period of the suspension is deducted."
LeBreton at 1229, citing G. Baudier-Lacantinerie & A. Tissier, TRAITE THEORIQUE ET PRATIQUE DE DROIT CIVIL, Nos. 415, 368, 389 (4 th ed.1924), reprinted in 5 CIVIL LAW TRANSLATIONS at 15 (La. St. Law Inst. Trans.1972).
Where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail. State ex rel. Bickman v. Dees, 367 So.2d 283 (La. 1978). There is no conflict between LSR.S. 40:1299.47 and LSA-C.C. art. 3472. Thus, the two provisions must be read in conformity with each other.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. The words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11.
LSA-R.S. 40:1299.47 specifically provides that the time for which a suit must be filed is suspended by the filing of a request with the medical review panel. LSA-C.C. art. 3472 makes it clear that the time during which prescription is suspended "is not counted toward the accrual of prescription." (Emphasis added). Because the word "suspend" was not specifically defined by the legislature, we must give it its "generally prevailing meaning." Black's Law Dictionary defines "suspend" as follows:
To interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily, but with an expectation or purpose of resumption.
BLACK'S LAW DICTIONARY 1446 (6 th ED.1990). The Webster's Dictionary definition of "suspend" is as follows:
To cause to stop temporarily; to set aside or make temporarily inoperative, to defer to a later time on specified conditions; to cease operation temporarily.
WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1189 (1990).
Accordingly, we hold that, when the ninety-day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to the period of time, under LSA-R.S. 9:5628, that remains unused at the time the request for a medical review panel is filed. Once a medical malpractice claim is submitted to the medical review panel, the prescriptive period is temporarily discontinued. Prescription commences to run again ninety days after the plaintiff has received notice of the panel's decision. That is, when the ninety day period expires, the period of suspension terminates and prescription commences to run again. Once prescription begins to run again, counting begins at the point at which the suspension period originally began.
Having decided that issue, we must now resolve the question of when prescription began to toll this plaintiff's claim. In other assignments of error, defendants assert that, even if this court agrees that plaintiff is entitled to the unused prescription time, plaintiff's petition has prescribed. Defendants further argue that the court of appeal erred in reversing the trial court's determination that plaintiff had sufficient notice of his cause of action as of November 2, 1992.
In Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), we defined the kind of notice that will start the running of prescription. The one-year prescriptive period for a medical malpractice action will not begin to run at the earliest *580 possible indication that a patient may have suffered some wrong. Jordan, 509 So.2d at 423. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against every person who might have caused his damage. Id. Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. Rather, in order for the prescriptive period to commence, the plaintiff must be able to state a cause of actionboth a wrongful act and resultant damages. Gassen v. East Jefferson General Hosp., 96-590 (La. App. 5 Cir. 12/30/96), 687 So.2d 120; writ denied, 97-0738 (La.5/1/97), 693 So.2d 735, citing Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986). Ignorance of the probable extent of injuries materially differs from ignorance of actionable harm, which delays commencement of prescription. Gassen, supra.
In the instant case, plaintiff filed his complaint with the medical review panel on August 2, 1993, alleging damages as a result of surgery performed on August 11, 1992. In the petition, plaintiff asserted that the alleged malpractice occurred on August 11, 1992. However, the petition did not specifically identify the date which the alleged malpractice was discovered. The trial court found, as a matter of fact, that plaintiff had sufficient information to incite curiosity as to the cause of his problems as of November 2, 1992. The court of appeal reversed the trial court's ruling, finding that the first indication in the record that plaintiff knew of the doctor's conduct was November 23, 1992.
The record does not support the trial court's conclusion that plaintiff had sufficient information to file a claim on November 2, 1992. According to Dr. Griffith's notes, he reviewed plaintiff's x-rays on November 2, 1992 and noted that plaintiff had "significant damage" to his knee. However, the medical records do not reflect when or if Dr. Griffith suggested to plaintiff that his condition was the result of negligent treatment. It was not until December 16, 1992 that the doctor "talked with [plaintiff] about his alternatives." Again, it is unclear whether the doctor shared any suspicions with plaintiff regarding Dr. Kucharchuk's care. Plaintiff's testimony was consistent with the doctor's notes in that plaintiff testified that he became aware that he needed additional surgeries "around the end of November or early December." Plaintiff did not testify that he consulted an attorney because of any particular knowledge of wrongdoing. He testified, without contradiction, that he decided to consult an attorney "just to be safe." The record does not reflect that plaintiff had notice of any actionable harm on November 2, 1992. Therefore, we affirm the court of appeal's ruling that plaintiff discovered that he had a cause of action on November 23, 1992, when he consulted with an attorney.
We hold that prescription commenced on November 23, 1992 and ran until August 2, 1993, the date the claim was presented to the medical review panel. At that point, 252 days had elapsed. Prescription was suspended from August 2, 1993, until March 14, 1994, the date plaintiff received notice of the panel's decision. Prescription was then suspended from March 15, 1994 until June 12, 1994, the date the ninety-day suspension period expired. On June 13, 1994, prescription began to run again and continued to run until September 15, 1994, the date Dr. Kucharchuk was served with the petition. An additional ninety-five days elapsed between June 13, 1994 and September 15, 1994.
The total prescriptive time that elapsed from November 23, 1992 to September 15, 1994 was 347 days. Therefore, the claim had not prescribed because plaintiff had an additional eighteen (18) days to file his action.
Defendants also argue that the court of appeal erred in failing to apply the manifest error standard of review to the trial court's factual findings. A trial *581 court's finding of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State of Louisiana, through Department of Transportation and Development, 92-1328 (La.4/12/93), 617 So.2d 880. The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart at 882.
As stated above, the record does not support the trial court's conclusion that plaintiff "had sufficient information to incite curiosity as to the cause of his discomfort" on November 2, 1992. Thus, even applying the manifest error standard of review, we find that the trial court's finding that prescription commenced on November 2, 1992 is clearly wrong.

CONCLUSION
We hold that when the ninety-day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to the period of time that remains unused at the time the request for a medical review panel is filed. We also hold that the court of appeal did not err in finding that prescription commenced on November 23, 1992 and that plaintiff's action had not prescribed. Accordingly, we affirm the court of appeal's decision and remand this matter to the trial court.
AFFIRMED AND REMANDED.
LEMMON, J., concurs and assigns reasons. MARCUS, J., dissents and assigns reasons. TRAYLOR, J., dissents for reasons assigned by MARCUS, J.
LEMMON, J., Concurring.
Upon further consideration, I am changing my position taken in my concurring opinion in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, a decision that did not reach the issue taken in the present case. I accordingly concur in the conclusions reached by the majority on the two major issues.

The Ninety-Day Period
La.Rev.Stat. 40:1299.47 A(2)(a) provides that the filing of a request for a medical review panel "shall suspend the time within which suit must be instituted," obviously meaning the one-year prescriptive period under La.Rev.Stat. 9:5628. (emphasis added). Section 1299.47 A(2)(a) further provides that the one-year prescriptive period is suspended "until ninety days following notification ... of the issuance of the opinion by the medical review panel." Since a prescriptive period, once suspended, "commences to run again upon the termination of the period of suspension" under La. Civ.Code art. 3472, Section 1299.47 A(2)(a) in unambiguous language suspends the one-year prescriptive period for medical malpractice actions from the date of filing of the panel request until ninety days after notice of the panel decision, after which the unaccrued portion of the one-year prescriptive period commences to run again under Article 3472.[1]
*582 Thus, a medical malpractice victim who files a panel request on the last date of the prescriptive period has ninety days from the notice of the panel decision to file an action in district court, whereas a victim who filed the request earlier in the one-year prescriptive period has ninety days plus the unaccrued portion of the one-year prescriptive period, whatever that portion may be.
It is significant that the Legislature used the term "suspension," which is a term of art in the Civil Code. If the Legislature had intended for the malpractice victim to have only ninety days from notice of the panel decision, the statute could have provided for filing in the district court within the unaccrued portion of the prescriptive period, but in no event less than ninety days. Or if the Legislature had intended for the victim not to have both ninety days and the unaccrued portion of the prescriptive period, the statute could have provided for ninety days or the unaccrued portion of the period, whichever is longer. The Legislature did neither. Rather, the Legislature expressly provided for suspension of the prescriptive period during the entire time the matter is before the panel until ninety days after the panel decision, and Article 3472 thereafter controls the commencement of the unaccrued portion of the prescriptive period.

Contra Non Valentem
La.Rev.Stat. 9:5628 recognizes the doctrine of contra non valentem and allows the medical malpractice victim "one year from the date of discovery of the alleged act, omission, or neglect" to bring an action for damages. Under the doctrine of contra non valentem, as interpreted in Corsey v. State of La. through the Dep't of Corrections, 375 So.2d 1319, 1322 (La. 1979), prescription does not run against a person when "the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant."
In the present case, plaintiff did not reasonably know immediately after the alleged malpractice on August 11, 1992 that he had a cause of action against the doctor. Therefore, prescription did not begin to run on that date. The critical issue is the determination of the date that the one-year prescriptive period began to run, a determination necessary for the calculation of the amount of unaccrued prescription when plaintiff filed his request for a medical review panel on August 2, 1993.
The determination of the beginning of the prescriptive period in a contra non valentem case, when the tort victim is not aware of his or her cause of action immediately upon the commission of the tort, has presented difficult problems. This court in Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), refined the inquiry to focus on the reasonableness of the plaintiff's action or inaction. Quoting Griffin v. Kinberger, 507 So.2d 821, 823 (La.1987), a medical malpractice case, this court in Jordan stated that "prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment."[2]
In the present case, plaintiff was released by the defendant doctor in October 1992 to return to light duty, but was referred by his employer's company doctor to a second surgeon because he could not return to work. On November 2, 1992, the second surgeon reviewed the videotape of the August 1992 surgery and advised plaintiff, insofar as this record shows, only *583 that he needed additional surgery. However, as the court of appeal noted, the record does not establish that plaintiff was unreasonable in failing to recognize that the need for second surgery was the result of improper medical treatment during or after the first surgery until the second surgeon informed plaintiff of his conclusions on December 16, 1992, or, at the earliest, when plaintiff on November 23, 1992 consulted an attorney who requested the second surgeon's examination records.
MARCUS, Justice, dissenting.
I disagree with the majority's conclusion that a medical malpractice claimant is allowed to add any part of the unused one year period of La. R.S. 9:5628 A to the ninety day period to institute suit set forth in La. R.S. 40:1299.47(A)(2)(a). The one year period of La. R.S. 9:5628 A applies to the request to convene a medical review panel, which request must be made prior to instituting suit. La. R.S. 40:1299.47(B)(1)(a)(i). Prescription is suspended during the medical review panel procedure, but once the procedure is completed and the medical review panel renders a decision, the time period of La. R.S. 9:5628 A becomes irrelevant. I would interpret the suspension in La. R.S. 40:1299.47(A)(2)(a) as referring to the suspension of the medical malpractice claim or the cause of action while it is being addressed by the medical review panel. Once the panel renders its decision, the claim becomes viable and remains alive by timely instituting the action in the district court within "ninety days following notification,... to the claimant or his attorney of the issuance of the opinion by the medical review panel...." Accordingly, I respectfully dissent.
NOTES
[*] Victory, J., not on panel. See Rule IV, Part 2, § 3.
[1] In LeBreton, I wrote that the one-year prescriptive period was no longer applicable once the decision of the medical review panel was rendered, at which time the ninety-day period in La.Rev.Stat. 40:1299.47 A(2)(a) became applicable. I now realize that I mistakenly reached this position on a theory similar to the merger-bar theory of the res judicata provisions of La.Rev.Stat. 13:4231. I erroneously viewed the cause of action asserted before the medical review panel as becoming merged with the panel decision, making the one-year prescriptive period no longer applicable and triggering the onset of res judicata unless an action was filed in district court within ninety days of notice of the decision (just as a judgment of the district court becomes res judicata if no appeal is filed within the delay for a devolutive appeal). The error in my theory was that a panel decision is not the equivalent of a district court judgment (into which, once rendered, the cause of action becomes merged). A panel decision has no preclusive value, but has only evidentiary value when the cause of action is subsequently presented to the district court under its original jurisdiction.
[2] In Jordan, this court characterized as an incomplete definition of the kind of notice necessary to begin the running of prescription the following language in Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (1970):

Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription. (footnote omitted).