h KIRBY, Judge.
Plaintiffs, the Campo Family, seek review of judgments sustaining two Exceptions of Prescription, dismissing their claims with prejudice. The claims arose out of allegations that Dr. Amilcar Correa, a neurosurgeon, breached the standard of care in his treatment of Alvin Campo at Humana Hospital.
STATEMENT OF THE FACTS
Mr. Alvin Campo, who is now deceased and represented by his family in this case, slipped and fell in 1989. The fall caused injury to his back and neck. After the fall Mr. Campo treated with Dr. John D. Olson, a neurologist, for a few weeks.
On or about April 10, 1991, Dr. Correa performed a lumbar laminectomy[1] on Mr. Campo in an attempt to alleviate his lower back pain. Dr. Correa explained that complications of this surgery include CSF (cerebral spinal fluid) leak and infection, and Mr. Campo consented to these possible complications. Subsequent to the lumbar surgery by Dr. Correa, Mr. Campo developed a fistula and CSF | ^drainage. On May 7, 1991, Dr. Correa inserted a lumbar peritoneal shunt to treat the CSF leakage. Dr. Correa had told Mr. Campo that the shunt was necessary. Thereafter, Mr. Campo developed an infection. Mr. Cam-po continued to treat with Dr. Correa until October of 1991.
In October of 1993, Mr. Campo saw Dr. Olson, who recommended he see another neurosurgeon. On October 26, 1993, Dr. Charles R. Billings, a neurosurgeon, examined Mr. Campo. Mr. Campo’s petition states that it was at this point he became aware of the act of malpractice.
On March 1,1994, plaintiffs filed a medical malpractice case with the Patients’ Compensation Fund, suggesting there may have been mistreatment in the care of Mr. Campo by the defendants.
On April 1, 1996, the medical review panel ruled that although Dr. Correa had breached the standard of care by placing the shunt into Mr. Campo, the shunt was not responsible for Mr. Campo’s problems and pain. Instead, the panel reasoned that all of Mr. Campo’s complaints stem as recognized complications from his back surgery.
The trial court heard exceptions of prescription from the defendants, Humana Hospital and Dr. Correa. It found that even when basing the act of negligence upon the act that occurred last in chronological order, i.e., the shunt surgery, the claim had prescribed on its face. Moreover, when a petition prescribes on its face, i.e., more than one year has passed since the last alleged act of negligence, the burden shifts to the plaintiff to prove that he did not know or could 13not have known of the essential facts underlying the claim. The trial court found that due to the pain and the infection, Mr. Campo should have known that something was wrong, and he should have filed a suit within a year of that knowledge. Since he did not file suit within that year, and plaintiffs could not produce proof of why they were not made aware of the claim, the trial court granted the defendants’ exceptions of prescription. Plaintiffs appeal the sustaining of these two exceptions of prescription.

STATEMENT OF THE LAW

Generally, the appellate standard of review for a factual finding by a trial court is that of manifest error, or the clearly wrong standard. Netwnan v. Fernwood Transportation, 2000-1036 (La.App. 4 Cir. 4/25/01), 785 So.2d 1026. The reason for this is because the trial court is in the best position to judge credibility. *118 This holds true even on an exception, where an evidentiary hearing was conducted. A full-blown trial of the issues is not required for the manifest error standard to apply.
In this case an evidentiary hearing was conducted and the trial court made a factual finding after the hearing. In a medical malpractice action[2] the case law shifts the burden of proof and forces the trial court to make a factual finding, i.e., whether there are sufficient facts to justify an interruption or suspension of prescription. Therefore, we apply the manifest error standard of review because the trial court alone had the opportunity to observe the demeanor of all witnesses at the evidentia-ry hearing.
|4The Louisiana Statute that states the prescriptive period for medical malpractice claims is LSA-R.S. 9:5628. In 1991, the time of the alleged malpractice it read:
A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, or omission or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. (Emphasis added.)
The burden of proof generally rests on a party pleading prescription as an affirmative defense. However, where the plaintiffs Petition shows on its face that the asserted claim has prescribed, the plaintiff bears the burden of proving that prescription has been sufficiently interrupted or suspended so as to bring the action within the prescriptive period. Wilkes v. Carroll, 30,066 (La.App. 2 Cir. 12/10/97), 704 So.2d 938; see also Caro v. Bradford White Corp., 96-120 (La.App. 5 Cir. 7/30/96), 678 So.2d 615; Acosta v. Campbell 98-2538 (La.App. 4 Cir. 8/11/99), 744 So.2d 112.
When it appears on the face of the petition that prescription has accrued, the plaintiff must allege and prove facts indicating that the essential facts, injury, and its causal relationship to the alleged misconduct were not apparent or discoverable until within one year before the suit was filed. White v. Willis-Knighton Medical Center, 25,575 (La.App. 2 Cir. 2/23/94), 632 So.2d 1198; Acosta, supra.
|fiA review of the record reveals that the plaintiffs’ petition has prescribed on its face. As it concerns Humana Hospital, the last professional visit by Alvin Campo to the hospital was on May 27, 1991. The petition dates the physician’s last act, upon which negligence is alleged, as May of 1991 as well. Discovery is alleged in October of 1993 and the Complaint/Petition was filed on March 1, 1994. Because the plaintiffs’ petition had prescribed on its face, the trial court was correct in shifting the burden of proof to the plaintiffs. Acosta, supra.
The case law tells us that the one year prescriptive period commences on the date that an injured party discovers or should have discovered the facts on which to base a cause of action. LaGrange v. Schumpert Medical Center, 33,541 (La. *119 App. 2 Cir. 6/21/00), 766 So.2d 473. This “discovery rule” does not require a plaintiff to have actual knowledge of the alleged wrong; constructive knowledge is sufficient. Phillips v. Hamilton Medical Group, 507 So.2d 277, 279 (La.App. 3 Cir.1987). Prescription commences to accrue when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he is a victim of a tort. Percy v. State, E.A. Conway Memorial Hospital, 478 So.2d 670 (La.App. 2 Cir.1985).
When a party has sufficient information to incite curiosity, or put a reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription. Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970).
In our analysis of each exception of prescription, we find it necessary to distinguish between the case of Humana Hospital and Dr. Correa.
|(As concerns the hospital, the trial court found the plaintiffs did not carry their burden of proof. Mr. Campo knew that he suffered a spinal fluid leak and subsequently developed meningitis, following the May 1991, surgery. He also allegedly complained of constant pain after the surgery in May of 1991. There was no continuing relationship with the hospital after Mr. Campo’s discharge. Dr. Billings’ opinion was that the treatment Dr. Correa chose was incorrect, not that the hospital had any influence in Dr. Correa’s selection of treatment. Moreover, Mr. Campo had been operated on before, and that operation resulted in the alleviation of his pre-operation pain. Based on these facts and hearing the testimony of Ms. Campo, the trial court found that a reasonable man in Mr. Campo’s circumstances would have obtained a second opinion from another physician such as Dr. Billings in less than twenty-nine (29) months. The twenty-nine month period exceeds the one year prescription period stated in La. R.S. 9:5628. Therefore, plaintiffs had the burden to demonstrate to the court an interruption or suspension of prescription vis-a-vis the hospital. It was not manifestly erroneous for the trial court to find that Mr. Campo knew or should have known that a second opinion was necessary, given his circumstances. Therefore, we affirm the granting of Humana Hospital’s exception.
As concerns the other defendant in this case, Dr. Correa, we must address additional factors, mainly, the allegations that Dr. Correa engaged in fraud or an attempt to conceal his alleged act of malpractice.
Plaintiff cites Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, for the proposition that for the prescriptive period to commence, 17the plaintiff must be able to state a cause of action both a wrongful act and resultant damages. Plaintiffs argue that because Mr. Campo’s physician mislead him, he was not able to state a wrongful act.
It was Dr. Correa who told Mr. Campo that he had suffered a spinal fluid leak and developed spinal meningitis, following the May 1991, surgery. This knowledge alone constituted enough notice to excite Mr. Campo’s attention and put him on guard that a tort may have occurred. This notice was given immediately following his lower back surgery in 1991. Plaintiffs’ claim was not filed until March 1, 1994, almost three years after the surgery, and well beyond the one-year prescription date.
In addition, as far back as May of 1991, Mr. Campo questioned Dr. Correa several times about the poor surgery results, indicating he knew something was wrong.
*120 Q. In May of 1991, did you question Dr. Correa as to the lack of good results from the surgery?
A. Yeah. I think on several occasions I asked him why I was still experiencing such pain and—
Ms. Campo testified that when questioned as to why Mr. Campo was experiencing pain after the surgery, Dr. Correa replied that back surgery was complicated and that some pain was normal. Nevertheless, Mr. Campo alleged he suffered constant pain after the surgery, pain which continued for greater than one year after his last visit with Dr. Correa. Mr. Campo endured that pain with the knowledge that there were problems with the surgery, never seeking a second opinion from another doctor, for over one year until he saw Dr. Billings.
IsAlso telling is the fact that Mr. Campo had previously undergone a cervical spine surgery by Dr. Correa, which resulted in almost immediate pain relief. Mr. Campo alleges not only to have experienced no relief as a result of the lumbar surgery, but to have gotten worse following the surgery. This fact as well should have put Mr. Campo on guard that there was a problem.
Finally, we note that in October of 1991, Mr. Campo ceased treatment with Dr. Correa and returned to Dr. Olson, a neurologist. Dr. Olson continued to see Mr. Campo until October of 1993 when he recommended that Mr. Campo see another neurosurgeon, Dr. Billings. Apparently, Campo saw Dr. Olson multiple times between October of 1991, and October of 1993. The record on appeal fails to demonstrate what exactly Dr. Olson was telling Mr. Campo, which would be relevant as to Mr. Campo having been put on notice as to the act of negligence. Therefore, in the absence of that evidence, the trial court did not err in sustaining the exception of prescription as to Dr. Correa because we do not know what Dr. Olson was telling Mr. Campo with respect to his complaints of pain. In the absence of the medical records of Dr. Olson and other parts of his deposition, we are required to affirm.
AFFIRMED.

. Laminectomy is the surgical removal of all or part of the bony arch of the spine.

. LSA-R.S. 9:5628, cited infra.