968 So.2d 814 (2007)
Willis Leon BOOKER, Plaintiff-Appellant
v.
Charles BYRD, M.D. and Willis-Knighton Medical Center, Defendants-Appellees.
No. 42,414-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*815 Willis Leon Booker, In Proper Person.
Watson, Blanche, Wilson & Posner, by Peter T. Dazzio, Bruce MacLachlan Horack, Jr., Meredith J. Trahant, Baton Rouge, for Appellee, Willis-Knighton Medical Center.
Pugh, Pugh & Pugh, L.L.P., by Robert G. Pugh, Jr., Shreveport, for Appellee Charles R. Byrd, M.D.
Before WILLIAMS, CARAWAY and MOORE, JJ.
CARAWAY, J.
Plaintiff appeals the trial court's judgment sustaining the defendants' peremptory exception of prescription and dismissing plaintiff's medical malpractice claims. Despite plaintiff's institution of a medical review panel proceeding and an opinion by the panel, timely suit in district court was never filed. Accordingly, the judgment of the trial court is affirmed.

Facts and Procedural History
This medical malpractice suit was never instituted by the injured plaintiff, Willis *816 Leon Booker, in the district court. Instead, on June 8, 2006, this action was commenced by the defendants, Dr. Charles R. Byrd and Willis-Knighton Medical Center ("W-K MC"), pursuant to a provision of the Louisiana Medical Malpractice Act ("MMA"), La. R.S. 40:1299.47(B)(2)(a), for a challenge of prescription or peremption to the plaintiff's pending claim before a medical review panel. Plaintiff's claim arose out of a March 2001 laparoscopic gallbladder surgery performed by Dr. Byrd and the five weeks of intensive care treatment for complications at W-K MC that followed.
As the result of unusual procedural actions before the Patients' Compensation Fund ("PCF"), two medical panel proceedings were begun on plaintiff's behalf. Yet, each PCF action revealed evidence of damaging medical complications occurring from the same 2001 surgery.
The first PCF action, Number XXXX-XXXXX ("PCF # 1"), was instituted on April 23, 2002, which was apparently within one year from the time of plaintiff's release from the hospital after surgery. PCF # 1 concluded with the opinion of the medical review panel on June 22, 2005. The panel found no medical malpractice by the defendants. The ruling identified the March 29, 2001 laparoscopic cholecystectomy as the surgical procedure, a biliary leak that resulted, and the numerous life-threatening complications that plaintiff suffered. The panel recognized the biliary leak as a known complication of the surgery and found no breach of the standard of care in Dr. Byrd's "operative procedure of the pre- or post-op management of Mr. Booker." The panel also found that the plaintiff's development of decubitus ulcers was a known risk of patients on ventilators and found no medical malpractice by W-K MC in the care extended to plaintiff during his long recovery.
After the panel's ruling, plaintiff obtained new counsel who, through two letters to the PCF in November and December 2005, attempted an "amendment" to the PCF # 1 proceeding. The "amendment" identified plaintiff's pulmonary embolism as another condition resulting from the surgical malpractice. Also, the "amendment" claimed that Dr. Byrd's procedure failed to remove four gallstones. These were matters allegedly "left out" of the PCF # 1 proceeding. The PCF responded to these claims by opening a new case, Number 2005-02164 ("PCF # 2").
In response to PCF # 2, the defendants brought this special proceeding in district court under the MMA asserting the exception of prescription or peremption of Booker's claims. The trial court considered the evidence of the filings before the PCF which the defendant presented with the exception. Booker offered no evidence.
In reaching its ruling granting the defendants' exception, the trial court made the following observations regarding Booker's "amendment" complaints to the PCF:
There are two ways to approach this complaint. Either it is an appeal of the board's opinion, or it is a new complaint. If it is an appeal, more than ninety days elapsed between the mailing of the review panel opinion and the communications sent by Mr. Harville on November 8, 2005, and December 13, 2005. As such, the original complaint has prescribed. If the complaint is considered as a new complaint, as the PCF did when it assigned a new file number on November 10, 2005, the complaint is barred by both prescription and peremption.
Booker has appealed the trial court's ruling.

*817 Discussion

Prescription in medical malpractice actions is governed by La. R.S. 9:5628(A), which provides:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Under the MMA, the prescriptive period for the malpractice claim is suspended from the time a complaint seeking MMA review is filed until 90 days following notification of the issuance of the medical review panel's opinion. La. R.S. 40:1299.47(A)(2)(a). This is because all malpractice claims against health care providers covered by the MMA, other than claims validly agreed to for submission to a lawfully binding arbitration procedure, must be reviewed by a medical review panel. When the ninety-day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to the period of time, under La. R.S. 9:5628, that remains unused at the time the request for a medical review panel is filed. Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, 579.
The principal purpose of the MMA is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patients Compensation Fund. As long as health care providers remain qualified under the Act, the providers and their insurers are liable for malpractice only to the extent provided in the Act. La. R.S. 40:1299.45(A). The MMA's limitation on the liability of covered health care providers is special legislation in derogation of the rights of tort victims. As such, the coverage of the MMA should be strictly construed.
The MMA provides for this state court proceeding instituted by the defendants in La. R.S. 40:1299.47(B)(2)(a), as follows:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
In Perritt v. Dona, 35,628, 35,724, 35,841 (La.App. 2d Cir.9/20/02), 827 So.2d 1222, affirmed in part, reversed in part (on other grounds) 02-2601, 02-2603 (La.7/2/03), 849 So.2d 56, we had occasion to address the "complaint" which the injured plaintiff must file with the PCF and the notice that must be given through that complaint to the defendant health care provider and the medical review panel for the malpractice claim. We found that the material fact allegations necessary for the malpractice "complaint" for the commencement of the medical review panel proceedings should include the fact allegations of the health care provider's action or inaction and the allegations of the injury that would not otherwise have been incurred. Affirming that portion of our ruling, the supreme *818 court held that the plaintiff is not required to specifically delineate in the MMA complaint every breach of the applicable standards of care, but rather need only present sufficient information for the medical review panel to make a determination as to whether the defendant's health care provider is entitled to the protections of the MMA regarding the claimed medical malpractice. See Perritt v. Dona, 849 So.2d 56.
The filings for PCF # 1 indicate that all of Dr. Byrd's actions as Booker's surgeon in 2001 were subject to review by the medical review panel. Despite notice through PCF # 1 of that crucial occurrence that is the subject matter of this litigation, Booker filed an "amendment" in the apparent belief that his cause of action was not completely addressed by PCF # 1. This course of action is problematic and clearly ill-advised, raising issues of issue preclusion, procedure under the MMA, and prescription. However, with the prescription issue now being presented, we agree with the trial court's analysis that prescription has run regardless of the unusual dual filings before the PCF.
In the present case, the alleged acts of malpractice occurred between March 29, 2001, the date of the surgery, and the following five weeks (35 days) during which Mr. Booker was in ICU. Accordingly, prescription on Mr. Booker's claims began running in May 2002. If the claims presented by Booker's filings in November and December 2005 represent a cause of action separate from his claims addressed by the initial panel ruling in PCF # 1, there would be no suspension of prescription resulting from the PCF # 1 proceedings and the maximum three-year prescription/peremption of La. R.S. 9:5628(A) ran on those claims.
On the other hand, if Booker's claims in PCF # 2 did not present a separate cause of action and merely further elaborated his initial action in PCF # 1, the suspension of prescription which resulted from the initial panel proceedings ended in the fall of 2005. Following 90 days after the issuance and mailing of the panel's opinion, prescription would begin running again.[1] La. R.S. 40:1299.47(A)(2)(a). Since the April 2002 commencement of PCF # 1 occurred almost one year following Booker's hospitalization, the time remaining on the one-year prescriptive period following the MMA suspension was short. Nothing in the MMA allows for Booker's subsequent "amendment" actions to suspend or interrupt the running of prescription, and timely suit in district court was necessary to interrupt prescription. Therefore, prescription ran months before the time of the filing of this special proceeding by defendants in June of 2006.

Conclusion
For the reasons set forth above, the judgment of the trial court sustaining the defendant's peremptory exception of prescription is hereby affirmed. The costs of this appeal are to be assessed to appellant.
AFFIRMED.
NOTES
[1] The 90-day period following the medical review panel's ruling in this case would have ended in the fall of 2005 when the special Executive Orders KBB 2005-32, KBB 2005-48, and KBB 2005-67 caused the suspension of prescription in the aftermath of Hurricanes Katrina and Rita. See La. R.S. 9:5831. At the conclusion of those special suspensions of liberative peremption in November 2005, prescription on Booker's claims presented in PCF # 1 began running again.