ON REHEARING
VICTORY, J *
liWe granted an application for rehearing in this case to consider whether our holding on original hearing conflicts with our decision in Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42 (on rehearing). On original hearing, this Court held that an amended pleading adding a new plaintiffs wrongful death claim after the medical malpractice action prescribed related back to the timely filing of the original petition pursuant to La. C.C.P. art. 1153 *203 and the analysis set forth in Giroir v. South La. Med. Ctr., Div. of Hospitals, 475 So.2d 1040 (La.1985). Further, we held that the new plaintiff was entitled to the benefit of the interruption of prescription on her survival action such that the amended petition adding her as a plaintiff to that cause of action was timely filed under the reasoning of Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La.1993). After reconsidering the record and the applicable law, we find that we erred on original hearing and now hold that the newly added plaintiffs claims have prescribed under the provisions of the Medical |2Malpractice Act (the “Act”). We therefore vacate our decision on original hearing, reverse the judgment of the court of appeal, and order that the case be remanded to the district court to grant defendants’ exception of prescription.
FACTS AND PROCEDURAL HISTORY
On October 10, 12, and 13, 2000, Terry Wan-en received medical treatment from various health care providers, and, on October 13, 2000, he died. Alleging that his death was caused by substandard medical care which led to a delay in diagnosing and treating a heart attack, on September 11, 2001, Pamela Wai'ren and Theresa Rene Warren filed a medical malpractice complaint with the Louisiana Patient’s Compensation Fund. Pamela and Theresa Warren are the wife and daughter of the decedent. At the time the PCF complaint was filed, the decedent’s other daughter, Sarah Warren Jimenez (“Sarah”), was aware of the filing but consciously chose not to be involved in the matter.** On August 27, 2002, a medical review panel issued an opinion stating that there was no breach of the standard of care, and the opinion was received by counsel for plaintiffs on September 19, 2002. On November 25, 2002, Pamela Warren and Theresa Warren timely filed suit against defendants [1] in the Nineteenth Judicial District Court alleging wrongful death and survival actions. Again, Sarah chose not to join in the suit. On July 6, 2004, plaintiffs filed a First Supplemental and Amending petition adding Sarah as a plaintiff asserting survival and wrongful death claims.
Defendants filed an exception of prescription arguing that Sarah’s claims had prescribed because she did not file her action within the time periods provided by the Act. Defendants asserted that Sarah testified in deposition that she was aware of the | Tiling of the medical review complaint and the instant lawsuit but chose not to participate. However, after she became aware that she might be called by plaintiffs as a witness, she determined that she might as well be part of the lawsuit. Defendants argued that these facts did not allow the relation back of her claims to the original petition under Giroir and that they were prejudiced by the addition of a new plaintiff nearly three years after the request for a medical review panel and nineteen months after the lawsuit was filed.
The trial court overruled the defendants’ exception of prescription and the court of appeal denied the defendants’ writ, citing La. C.C.P. art. 1153 and Giroir. Warren v. Louisiana Medical Mut. Ins. Co., 06—412 (LaApp. 1 Cir. 5/18/06). This Court then remanded the case to the court of appeal for briefing, argument and opinion. Warren v. Louisiana Medical Mut. his. *204 Co., 06-1547 (La.9/29/06), 938 So.2d 693. Again, the court of appeal denied the writ relying on Giroir. Warren v. Louisiana Medical Mut. Ins. Co., 06-412 (LaApp. 1 Cir. 2/9/07), 2007 WL 437652. This Court granted the defendants’ writ application, Warren v. Louisiana Medical Mut. Ins. Co., 07-492 (La.4/27/07), 955 So.2d 670, and affirmed the judgment of the court of appeal. Warren v. Louisiana Medical Mut. Ins. Co., 07-0492 (La.12/2/08), 21 So.3d 186. On February 13, 2009, we granted the defendants’ application for rehearing.
DISCUSSION
La. R.S. 9:5628(A) provides the time periods in which medical malpractice actions must be filed, as follows:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, |4omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
In order to file a medical malpractice action, a party must first present his proposed complaint to a medical review panel for review. La.R.S.40:1299.47(B)(l)(a)(i). La. R.S. 40:1299.47(A)(2)(a) provides for the suspension of the period provided in La. R.S. 9:5628 during the time the complaint is pending before the medical review panel, as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and soli-dary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.... [2]
*205 | ¿Recently, ⅛ Borel, supra, four members of this Court held that the three year time period in La. R.S. 9:5628 was prescriptive, rather than peremptive.[3] In so doing, we reaffirmed our prior holding in Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723-24 (La.1986), which had held that the one and three year periods were prescriptive “with only the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect.”
In Borel, the plaintiffs timely filed a malpractice complaint with the Louisiana Patient’s Compensation Fund against two doctors and a hospital, thereby satisfying the requirements of La. R.S. 40:1299.47(B)(l)(a)(i) that no action may be filed against a health care provider before a claimant’s proposed complaint has been presented to a medical review panel. This timely request suspended prescription until ninety days following notification of the panel’s issuance of an opinion against all parties named in the complaint and all joint and solidary obligors and all joint tortfeasors. La. R.S. 40:1299.47(A)(2)(a). Within 90 days of being notified of the panel’s opinion, the plaintiffs filed suit in district court against the hospital, but not against the two doctors. After the three year period provided in La. R.S. 9:5628, plaintiffs attempted to amend their petition to add the doctors and their insurer, and when this failed, they filed a separate lawsuit against them which was later consolidated with the original suit. In response, the defendants filed an exception of prescription. Plaintiffs contested, arguing that La. C.C. art. 2324(C), providing that “[ijnterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors,” ^applied such that their timely suit against the hospital interrupted prescription against the other joint tortfea-sors. In Borel, we disagreed and held that “the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. art. 2324(C).” Borel, supra at 69.
In reaching this conclusion, we relied on our earlier decision in LeBreton, supra. In LeBreton, the plaintiffs filed their medical malpractice action in the district court before filing their request for review before a medical review panel as required by La. R.S. 40:1299.47(B)(l)(a)(i). The plaintiffs’ district court suit was dismissed without prejudice as premature. Several years later, the medical review panel notified plaintiffs of its opinion, but plaintiffs did not file suit within 90 days as required by *206 La. R.S. 40:1299.47(A)(2). Plaintiffs argued that its suit was not prescribed because the filing of suit in district court prior to filing the medical review panel complaint interrupted prescription under La. C.C. art. 3466 and 3472. Because prescription was interrupted at the time their medical review request was filed and because that filing suspended prescription until 90 days after being notified of the panel decision, plaintiffs argued that prescription began again at that time and they had one year after the expiration of the suspensive period of La. R.S. 40:1299.47(A)(2) in which to file suit. This Court disagreed, holding as follows:
Actions for medical malpractice against certain health care providers, such as the defendants herein, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of La. R.S. 40:1299.41, et seq., and La. R.S. 9:5628, which delineate the li-berative prescription applicable to actions for medical malpractice under Title 40. It specifically provides, inter alia, that the filing of a medical malpractice claim with 'the board only suspends the time within which suit must be instituted in a district court. On the other hand, if the general codal articles of 34.66 and 3472 apply ... then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out. [./Therein lies the conflict. If we let this ruling stand, we will condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year of prescription in addition to the suspended time provided by the Medical Malpractice Act, within which to file the suit anew.
714 So.2d at 1229-30. Thus, we held that the general provisions on interruption of prescription found in La. C.C. art. 3462 could not be simultaneously applied with the specific provision on suspension of prescription contained in La. R.S. 40:1299.47(A)(2)(a) to defeat the defendants’ exception of prescription.
In relying on LeBreton in Borel, we held although LeBreton was presented in a different factual and procedural posture, the “holding in LeBreton clearly stands for the principle that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription to the exclusion of the general codal articles on interruption of prescription,” and “that holding is broad enough to extend to the instant case.” Borel, supra at 67. We noted in Borel that a contrary holding applying La. C.C. art. 2324(C) “would potentially subject a health care provider to an indefinite period of prescription, even after the claim has been evaluated by a medical review panel, a result clearly at odds with the purpose of the [Act], which ... was to curtail lengthy periods for filing malpractice suits ...” Id. at 68, n. 12.
In reviewing our opinion on original hearing, we see that it is contrary to Borel in two respects. First, on original hearing this Court relied on Williams, supra, to hold that because Sarah shared her survival cause of action with her mother and sister, prescription on that cause of action was interrupted when Sarah’s mother and sister timely filed suit. However, while Williams held that the general codal articles |8on interruption of prescription, La. C.C. art. 3462,[4] 1799,[5] and 3503,[6] ap- *207 plied such that suit against one solidary obligor interrupted prescription against another solidary obligor, Williams was not a medical malpractice action. For had it been a medical malpractice action, Borel would dictate that the specific provisions of the Act apply to the exclusion of the general code articles on interruption of prescription against solidary obligors, just as the specific provisions of the Act regarding suspension of prescription applied to the exclusion of the general code article on interruption of prescription against joint tortfeasors under Borel. Because the holding of Williams has no application in the medical malpractice area and its application in that area is contrary to Borel, we erred in relying on Williams on original hearing to hold that Sarah’s survival claim had not prescribed.
Secondly, our holding on original hearing that the amended pleading adding a new plaintiff after the expiration of the prescriptive period related back to the timely filing of the original petition pursuant to La. C.C.P. art. 1153 is contrary to Borel, as well as to LeBreton. La. C.C.P. art. 1153 provides that “[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.” LeBreton and Borel stand for the proposition that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription to the exclusion of the general codal articles on interruption of [ ¡¡prescription. These cases are equally applicable here. The expressed reasoning behind the holding in LeBreton was that if the general rules on interruption were to apply to a medical malpractice action, “then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out,” and “[t]herein lies the conflict.” LeBreton, supra at 1230. Although La. C.C.P. art. 1153 does not “interrupt” prescription as did the general codal articles in LeBreton and Borel, “relation back” of an untimely filed amended petition directly avoids the application of prescription by allowing a claim that would have otherwise prescribed to proceed. The effect of this interference is that if relation back is allowed, the “prescription and suspension provisions provided in the Medical Malpractice Act will be written out,” which, as we recognized in LeBreton, presents “a conflict.” LeBreton, supra at 1230. Further, the application of La. C.C.P. art. 1153 “would potentially subject a health care provider to an indefinite period of prescription, ... a result clearly at odds with the purpose of the [Act].” Borel, supra at 68, n. 12. Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription, under Borel, we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act. The Act has no rules allowing relation back of pleadings for medical malpractice claims. The application of Article 1153 would permit the adding of an plaintiff subsequent *208 to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47; therefore, La. C.C.P. art. 1153 may not be applied to the medical malpractice action under the reasoning of LeBreton and So-rel.[7]
^CONCLUSION
We erred on original hearing allowing relation back of a pleading adding a plaintiff after the prescriptive period provided by the Act had run. Our prior jurisprudence holds that medical malpractice claims are governed exclusively by the specific provisions of the Act regarding prescription and suspension of prescription. For that reason, our holding on original hearing that a general codal article providing for interruption of prescription applied to defeat prescription on Sarah’s survival claim under the Act was error. Further, because any general codal article which conflicts with the operation of prescription under the Act cannot be applied in a medical malpractice case, we erred in allowing a general codal article allowing relation back of a pleading to defeat prescription on Sarah’s wrongful death claim under the Act.[8]
DECREE
For the reasons expressed herein, the judgment of the court of appeal is reversed and the matter is remanded to the trial court to grant defendants’ exception of prescription.
REVERSED AND REMANDED.
JOHNSON and WEIMER, JJ., dissent and assign reasons.
KNOLL, J., concurs in the result and assigns reasons.
GUIDRY, J., concurs in the result.
WEIMER, J., dissents and assigns reasons.

 Retired Judge Philip Ciaccio, assigned as Justice ad hoc, sitting for Justice Chet D. Traylor, now retired.

 Sarah was at the age of majority at the time the medical malpractice complaint was filed.

. The defendants are Louisiana Medical Mutual Insurance Company, Jeffrey A. Lamp, M.D., Robyn B. Germany, M.D., Sandra Moody, NP-C, and Family Health of Louisiana, Inc.

. In LeBreton v. Rabilo, 97-2221 (La.7/8/98), 714 So.2d 1226, 1230-31, we explained this suspensive period as follows:
Keeping in mind Plainiol's explanation for the underlying need for the principle of suspension, it is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. La.R.S. 40:1299.47(A)(2)(a). Moreover, as provided by statute, the filing of the *205 complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider.... Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.

. However, our further holding in Borel lessens the impact of this distinction. As explained in this opinion, by ruling that specific provisions of the Act applied to the exclusion of the general codal articles on interruption of prescription, Borel held that only the suspen-sive periods provided for in the Act can apply to suspend the prescriptive period of La. R.S. 9:5628. So, although the three year period is prescriptive, it is so only in a limited sense because the general codal articles allowing interruption or suspension of that prescriptive period do not apply.

. La. C.C. art. 3462 provides that prescription is interrupted when the obligee commences *207 an action against the obligor in a court of competent jurisdiction and venue.

. La. C.C. art. 1799 provides that the "interruption of prescription against one solidary obligor is effective against all solidary obli-gors, and their heirs."

. La. C.C. art. 3503 provides that “[w]hen prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors."

. This case is not governed by Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, which specifically found that there was no conflict between La. R.S. 40:1299.47 and La. C.C. art. 3472, and thus applied art. 3472 to the medical malpractice action. La. C.C. art. 3472 simply provides that a period of suspension is not counted toward accrual of prescription and that prescription commences to run again upon the termination of the suspensive period. The Court in Guitreau applied those guidelines to the suspension of prescription provided for in La. R.S. 40:1299.47, and held that after the ninety-day period was completed, the plaintiffs were entitled to the period of time under La. R.S. 9:5628 that remained unused at the time the request for a medical review panel is filed. There was no conflict as the application of La. C.C. art. 3472 did nothing to interfere with prescription and suspension of prescription provided for under the Act.

. Because of our decision on these issues, any discussion of the issue of whether relation back of a pleading belatedly adding a plaintiff under La. C.C.P. art. 1153 is allowed in the absence of a pleading mistake would be dicta. However, we note that our opinion on original hearing addressing the requirements for adding a plaintiff under La. C.C.P. art. 1153 has been vacated.