CHUTZ, J.,
dissenting.
| prescription in a medical malpractice action will not begin at the earliest indica *64 tion that a patient may have suffered some wrong. For prescription to commence, the plaintiff' must be able- to .state a cause of action — both a wrongful act and resultant damages. Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, 579-80; In re Med. Review Pan el ex rel. Rachal, 48,984 (La.App.2d Cir.6/25/14), 144 So.3d 1199, 1203, writ denied, 14-1887 (La.11/14/14), 152 So.3d 886. Prescription will not run as long as it was reasonable for the plaintiff not to recognize that his condition might be treatment related. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 511; Griffin v. Kinberger, 507 So.2d 821, 823-24 (La.1987). In determining the reasonableness of a plaintiffs conduct, courts must be mindful that the Louisiana Supreme Court has ^declared that prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against every person who might have caused his damage. Guitreau, 763 So.2d at 579-80.
In the instant case, Mr. Verbois was riot unreasonable in failing to recognize he may have been the victim of malpractice until after the September 2012 surgery performed by Dr. LeBlanc. Mr. Verbois certainly knew prior to that time that the outcome from the surgeries and treatment performed by Dr. Taylor had been poor. However, the mere fact of a poor outcome does not suggest malpractice to a reasonable person using common sense. Additionally, the admissions of concern |2made by Mr. Verbois in his deposition regarding the care Dr. Taylor provided to him were not based on any specific information Mr. Verbois possessed. They were nothing more than expressions of Mr. Verbois’ natural apprehension that something might be wrong since his medical condition was not improving. Mr. Verbois did not testify that he believed Dr. Taylor had done anything wrong but merely that he was concerned about his treatment, which is certainly a reasonable response.
Further, I respectfully disagree with the majority’s conclusion that by December of 2011 Mr. Verbois’ concerns had “raised to the level of wanting another doctor.” Although Mr. Verbois sought a consultation with Dr. LeBlanc at that time for purposes of a second opinion, he gave no indication of “wanting another doctor.” Seeking a second, opinion is an option often pursued by a prudent individual faced with a serious medical condition and, in itself, is not an indication, the individual suspects malpractice has occurred or wants a new doctor. In fact, when Dr. LeBlanc advised Mr. Verbois that he could not become involved in his case as long as Mr. Verbois was under Dr. Taylor’s care, Mr. Verbois chose to forego the consultation with Dr. LeBlanc in order to remain under Dr. Taylor’s care. ■
Under the circumstances, the record does not support the conclusion that Mr. Verbois had sufficient information to constitute constructive knowledge of potential malpractice more than one year prior to the filing of his medical review panel complaint in July 2013. Dr. Taylor never diagnosed the cause of Mr. Verbois’ continuing problems and Dr. LeBlanc was able to do so only after approximately five months of treatment and an exploratory surgery. In effect, the majority appears to be holding Mr, Verbois, a lay person, to at least the standard of a medical care provider, if not greater, in determining when he should have known that Dr. Taylor committed malpractice during the course of his treatment. The [smajority’s position effectively forces a patient who suffers a poor medical outcome to rush to the courthouse to file suit against -his doctor, even -in the absence of any actual or constructive notice of malpractice, in order to avoid the *65 possibility that a potential malpractice claim might prescribe.
For these reasons, I respectfully dissent.