11 STEWART, Judge.
In this medical malpractice case, the trial court granted the exception of prescription filed by the defendant, Louisiana State University Health Sciences Center-Shreveport (“LSU Health Sciences Center”), formerly known as Louisiana State University Medical Center-Shreveport. For the following reasons, we affirm.
FACTS
In early 1996, Tammy Joyce Abbott, a licensed practical nurse, went to see Dr. Wendy Bean to confirm that she was pregnant. Dr. Bean confirmed the pregnancy and also advised Ms. Abbott that she had detected a bruit, an abnormal sound heard through a stethoscope usually caused by an abnormal flow of blood in the heart or a blood vessel. Dr. Bean referred Ms. Abbott to Dr. Jones in DeRidder, Louisiana, who then referred her to a specialist at the LSU Medical Center. The specialist treated Ms. Abbott with various blood pressure medications, all apparently without success. During this treatment by the LSU Health Sciences Center specialist, Ms. Abbott suspected that she had a condition which her doctors had failed to diagnose. She and her friend Sarah Trainer, a registered nurse, did their own research in medical textbooks and arrived at the conclusion that Ms. Abbott had renal artery stenosis, a condition not previously diagnosed by her doctors.
In September 1996, Ms. Abbott was admitted to the LSU Medical Center in an attempt to get her blood pressure under control. During this hospitalization, she gave birth to Noel Alexander Shorts by cesarean section on September 15, 1996. The birth was approximately two months | ¡.premature. Consequently, Noel suffered from various postnatal complications and continues to have various related health problems. He was not released from the hospital until January of 1997.
Ms. Abbott also continued to suffer from high blood pressure after her release from the hospital in September 1996. After consulting with another specialist in October 1996, he determined that she had renal artery stenosis which would require surgery to correct. Ms. Abbott had the corrective surgery in April 1997.
She first consulted with an attorney in January 1997 regarding the possibility of filing the present claim. On February 10, 1998, Ms. Abbott filed a medical malpractice claim on her behalf and on behalf of her son, Noel Alexander Shorts, against the LSU Health Sciences Center for failing to diagnose the kidney blockage, for *1109 failing to use available technology to diagnose the blockage, for failing to care for Ms. Abbott as a high risk pregnancy, and for failing to exercise the standard of medical care which was reasonable under the circumstances. After taking Ms. Abbott’s deposition, LSU Health Sciences Center filed an Exception of Prescription.
The testimony from Ms. Abbott’s deposition, which is dispositive of the issue before this court, pertained to the diagnosis made by Dr. Deliauga in October 1996, more than 15 months prior to the filing of her petition. She testified on two separate occasions to this fact, and her testimony was unequivocal. Initially she referred to the October diagnosis under examination by defendant’s attorney, Jerald L. Perl-man:
|sMr. Perlman: And between that point in time and April of '97, did you miss any appreciable time from work?
Ms. Abbott: No, because I was going to see Dr. Deliauga.
Mr. Perlman: Okay.
Ms. Abbott: And he was treating me for my blood pressure. And he did an x-ray and found out it was my kidneys, but he would not do the surgery because I didn’t have insurance.
Mr. Perlman: So you were hospitalized to have your delivery in September of '96 and then you had your surgery on your kidneys in April of '97?
Ms. Abbott: Correct.
Mr. Perlman: So we’re talking about a six to seven month period?
Ms. Abbott: Correct. I went to Dr. Deliauga in October. And two weeks later, I had an x-ray and we knew it was my kidneys, but I could not have my surgery because I did not have medical insurance.
Then Ms. Abbott reiterated the point on examination by her own attorney David Wallace:
Mr. Wallace: It is my understanding that the surgery where you actually found out what the problem was occurred in April of 1997; is that correct?
Ms. Abbott: That’s when I actually had the surgery, but I knew in October that I did have the renal artery steno-sis after I had my sonogram done.
The basis of Ms. Abbott’s claim is the failure of the LSU Health Sciences Center to diagnose the renal artery stenosis during her pregnancy. Consequently, when she found out in October that it was in fact renal artery stenosis that was causing the complications, she had knowledge of facts |4sufficient to make the cause of action “reasonably knowable” to the plaintiff thereby commencing the running of the one-year prescriptive period.
This knowledge is evidenced by the fact that Ms. Abbott consulted with an attorney in January 1997 for the following reasons:
Ms. Abbott: Because I was released from the hospital with my blood pressure still elevated. And I wanted to go ahead, because I knew it was renal artery stenosis because Dr. Bean told me that I had a blockage. So they checked my heart and there was no blockage there. So it had to be my renal. They never did anything about it. They sent a cardiologist to check out my heart. That was done, they said, when I get discharged to go see my specialist or whoever I needed to see. I could have had the problem fixed while I was pregnant, is the whole problem.
Mr. Perlman: So you decided to see an attorney in January of 1997, because *1110 of issues with your own medical situation; is that correct?
Ms. Abbott: Right, and my son’s future.
The matter was submitted to the trial court on the parties memoranda and Ms. Abbott’s deposition. The trial court granted defendant’s exception and dismissed the matter with prejudice. Plaintiffs appeal.
DISCUSSION

Standard of Review

When the peremptory exception of prescription is pleaded before the answer, it shall be tried and decided in advance of the trial of the case. La. C.C.P. art. 929(A). On the trial of a peremptory exception pleaded prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931.
| fiWhen the trial court’s ruling is based on factual conclusions made after receiving evidence, the appellate court standard of review is that of manifest error. Masters v. Fields, 27,924 (La.App.2d Cir.1/24/96), 666 So.2d 1333. If the findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse the trial court even though convinced that had it been sitting as the trier of fact, it would have weighed evidence differently. Creighton v. Bryant, 34,893 (La.App.2d Cir.6/20/01), 793 So.2d 275.

Prescription

Prescription on medical malpractice claims is governed by La. R.S. 9:5628, which at all times pertinent to this case provided:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
The one-year prescriptive period begins to run on the date that the injured party discovers or should have discovered the facts upon which a reasonable person would conclude that they had been the victim of a tort. When a party has sufficient information to incite curiosity, or put a | ¿reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription. Cruse v. Louisiana State University Medical Center, 34,779 (La. App.2d Cir.6/20/01), 792 So.2d 798. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment, and there is no effort by the health care provider to mislead or cover up information which is available to plaintiff through inquiry or professional medical or *1111 legal advice, then the cause of action is reasonably knowable to plaintiff. Failure to act by a plaintiff for more than one year under these circumstances is not reasonable. Harlan v. Roberts, 565 So.2d 482 (La.App. 2d Cir.1990).
The prescriptive period in medical malpractice claims will not begin to run at the earliest possible indication that a patient may have suffered some wrong. Guitreau v. Kucharchuk, M.D., 99-2570 (La.5/16/00), 763 So.2d 575. “Rather, in order for the prescriptive period to commence, the plaintiff must be able to state a cause of action-both a wrongful act and resultant damages.” Guitreau, at 580.
The law of prescription does not require that the patient be informed by a medical practitioner or an attorney of possible malpractice before the prescriptive period begins to run. Dixon v. Louisiana State University Medical Center, 33,036 (La.App.2d Cir.1/26/00), 750 So.2d 408, writ denied, 00-0627 (La.4/20/00), 760 So.2d 350.
When it appears on the face of the petition that prescription has accrued, the plaintiff must allege and prove facts indicating that the injury |7and its causal connection were not apparent or discoverable until within the year before the suit was filed. White v. Willis-Knighton Medical Center, 25,575 (La.App.2d Cir.2/23/94), 632 So.2d 1198, writ denied, 94-1024 (La.6/17/94), 638 So.2d 1098.

Analysis

Tammy Joyce Abbott filed her suit on February 10, 1998, more than a year after the alleged malpractice by the LSU Health Sciences Center in .failing to diagnose her renal artery stenosis. On its face, however, it does not appear from her petition that the action has prescribed, since she alleges that the mis-diagnosis or failure to diagnose was allegedly not brought to her attention until the correct diagnosis was made during her surgery in March 1997.
Therefore, the question presented by the defendant’s exception of prescription is whether Ms. Abbott knew or should have known about her actionable cause prior to February 10, 1998. In sustaining the exception, the trial court found that she either did know or should have known. We agree and find that Ms. Abbott knew of the failure to diagnose more than one year prior to the filing of her petition.
Ms. Abbott testified in her deposition that Dr. Bean had heard a renal bruit, indicating abnormal blood flow in the immediate vicinity of the kidneys, when she first discovered she was pregnant. After being referred to the doctor at the LSU Health Sciences Center who initially failed to diagnose her kidney blockage, Ms. Abbott and her friend, Sarah Trainer, a registered nurse, did their own research and determined that her blood |spressure problems were most probably the result of renal artery stenosis. Although Abbott did not have a conclusive diagnosis of renal artery stenosis, she apparently had doubts about the treatment she was receiving from the LSU Health Sciences Center because of her continued problems with elevated blood pressure.
The record plainly shows that Ms. Abbott was acutely aware of the failure to diagnose by the LSU Health Sciences Center and, at the very least, of the possibility that the failure was an actionable cause in October 1996. Assuming arguen-do that the triggering event for prescription could have occurred as late as January 1997, when Abbott went to see an attorney *1112 regarding her continuing health problems and her son’s future, the one-year prescriptive period would have already elapsed by February 1998, when Ms. Abbott filed her petition.
Therefore, we reject Ms. Abbott’s argument presented in her brief before this court that prescription should not have commenced to run until April 1997 when she had the surgery which confirmed that she had renal artery stenosis. The basis of her argument is that despite her prior suspicions based on her education as a licensed practical nurse, she could not have known until the surgery confirmed her suspicions. Nonetheless, we find that this argument is based on assumed facts inconsistent with the record before us. Ms. Abbott specifically stated that in October 1996 she was diagnosed by Dr. Deliauga as having renal artery stenosis. She made this unequivocal assertion on two separate occasions during the deposition. That directly contradicts Ms. Abbott’s assertion before this court that the 1gdismissal by the trial court was based on her pre-surgical speculation as to her own condition.
CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining defendant’s Exception of Prescription is affirmed. Costs are assessed to plaintiff.
AFFIRMED.