^^JjLOVE, J.
This action arises from a medical malpractice case in which Appellants, Leonard G. Sitzman Jr., and Felicine Ann Sin-gletary Sitzman assert appellees Dr. Daniel E. Buras, and Dr. Craig J. Brand-ner negligently concealed the severity of Mr. Sitzman’s condition causing him to suffer excruciating pain, physical and mental anguish and other adverse physical consequences. Mrs. Sitzman asserts loss of consortium, service and society with her husband. Drs. Buras and Brandner independently filed Exceptions of Prescription asserting that appellant’s claims had prescribed. The trial court granted their exceptions and it is from those judgments appellant appeals.
FACTS AND PROCEDURAL HISTORY
On May 14,1999, appellant, Leonard G. Sitzman Jr., (hereinafter “Mr. Sitzman”) was treated by Dr. Daniel E. Buras (hereinafter “Dr. Buras”), D.D.S. for pain, tooth decay and an infection in the upper left molar, tooth # 15. Upon examination of Mr. Sitzman, Dr. Buras determined that the tooth could not be saved and required extraction in order to alleviate Mr. Sitz-man’s discomfort. Dr. LBuras informed Mr. Sitzman that there was a high probability of complications because of the proximity of the tooth’s structure to the bone between the tooth and the sinus cavity. Subsequently, Mr. Sitzman was provided a consent form, which he executed.[1]
Following the procedure the site of the extraction became infected. In order to combat this infection Dr. Buras prescribed antibiotics and an oral rinse. As a result of the infection, which was not remedied by the prescription of antibiotics, a fistula formed. Dr. Buras attempted an in-office surgical procedure to remove, repair and close the fistula, but this attempt was unsuccessful. Dr. Buras advised Mr. Sitz-man that the first repair did not heal; therefore he would require an in-patient procedure with the assistance of an Ear, Nose and Throat Specialist. Subsequent to this recommendation, on August 10, 1999, Dr. Buras ceased treatment of Mr. Sitzman because Mr. Sitzman’s insurance declined to pay for Dr. Buras’ services.[2]
As a result of this cessation in treatment by Dr. Buras, Mr. Sitzman began treatment with Dr. Brandner on August 19, 1999. Dr. Brandner prescribed antibiotics, pain medication and recommended extraction of tooth # 14 in order to better facilitate treatment of the fistula that developed from the infection which occurred after the extraction of tooth # 15. Mr. Sitzman, again, was informed of the risks and complications in connection with the extraction of tooth # 14 and |sconsented.[3] Subse *757 quent to his consent, on September 9, 1999, Dr. Brander extracted tooth # 14 and attempted to clean the infection which had spread to Mr. Sitzmans’s left sinus, and remove, repair and close the fistula. The attempt to treat and close the fistula by Dr. Brandner was unsuccessful. Following this attempt, on September 16, 1999, Dr. Brandner performed a biopsy, which indicated Mr. Sitzman had a Poly-poid sinusitis, heavy growth of Kelbsiella pneumonia, for which Dr. Brandner prescribed Cipro 500 mg., Lortab 10/500 and Entex. Dr. Brandner then referred Mr. Sitzman to Dr. Louis Hebert (hereinafter “Dr. Hebert”), an Ear, Nose and Throat (“ENT”) specialist, because further treatment of the fistula could not be performed out patient and required hospitalization.[4] Subsequent to this recommendation, Mr. Sitzman’s HMO refused further payment for Dr. Brandner’s services asserting it was not covered under Mr. Sitzman’s policy.[5] Mr. Sitzman received no further treatment from Dr. Brandner regarding the fístula and the resulting infection.
In August of 2000, Mr. Sitzman was diagnosed with a leaking aortic valve. On June 4, 2002, Mr. Sitzman’s returned to Dr. Brandner in order to obtain surgical clearance for his aortic valve replacement surgery. Dr. Brander replaced two filings that resulted from tooth decay, but no treatment was requested nor received for the sinus fistula or infection that was diagnosed in 1999.
|4This action was commenced on May 23, 2003, when Mr. Sitzman and his wife Ms. Sitzman, filed a claim for medical malpractice and a request for review by a medical panel of oral maxillofacial surgeons with the Louisiana Patient’s Compensation Fund (“PCF”) of Drs: Buras and Brandner and their treatment of Mr. Sitzman. Mr. Sitzman asserts that Drs. Buras and Brandner negligently concealed the severity of his condition, thwarting his understanding of the urgency of his condition. Mr. Sitzman asserts that he did not discover the alleged malpractice in question until well over three years from the date of occurrence. Subsequent to the filing of this claim, Mr. Sitzman amended his malpractice suit to assert that Drs. Buras and Brandner concealed his medical prognosis, which resulted in damage to his heart requiring'him to undergo surgery, excruciating pain, physical and mental anguish, distress, and other adverse physical consequences.
Subsequently, Dr. Buras filed an Exception of Prescription, which was granted by the trial court. As a consequence of the granting of Dr. Buras’s exception, Dr. Brandner filed a similar Exception of Prescription, which was also granted by the trial court.
It is from these judgments that Mr. Sitzman filed this timely appeal.
| .ANALYSIS

Standard of Review

An appellate court can only reverse a fact finder’s determinations when: (1) it finds from the record that a reasonable factual basis does not exist for the findings of the trial court, and (2) it further determines that the record estab *758 lishes the findings are manifestly erroneous. Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. Where there are two permissible views of the evidence, a fact-finder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, “if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990); Aaron Banks, Jr. v. Industrial Roofing & Sheet Metal Works, Inc. 96-2840 (La.7/1/97), 696 So.2d 551.
When the trial court’s ruling on a peremptory exception is based on factual conclusions made after receiving evidence, the appellate court’s standard of review | rjs manifest error. In re Medical Review Panel for the Claim of Tammy Joyce Abbott v. Louisiana State University Medical Center-Shreveport, 35,693 (La.App. 2 Cir. 2/27/02) 811 So.2d 1107.
Appellants assert the trial court erred in failing to consider the applicability of the third category of contra non valentum and in granting Exceptions of Prescription where the plaintiff/dental patient made a showing of fraudulent concealment, misrepresentation, and/or ill practice against medical care providers whose conduct tolled the running of prescription.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Campo v. Correa, 01-2707, p. 7 (La.6/21/02), 828 So.2d 502, 508. However if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Campo, 01-2707 at 7, 828 So.2d at 508.
The prescriptive period for medical malpractice is provided LSA § 9:5628, which states:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. I0:1299A1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
|7The general prescriptive period which is applied in medical malpractice actions is one year; specifically in cases in which damages are immediately apparent. Brenda Sue Carter v. Gary Stephen Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261. In cases where the damages are not immediately apparent, a statutory exception has been applied for the promotion of equity. This exception, also called the discovery exception, was codified as the fourth category of the larger prescription exception of contra non valentum. Contra non valentum, which translates to “prescription does not run against a person who could not bring his suit,” allows a plaintiff to bring their medical malpractice claim after the one-year prescriptive peri *759 od has passed if they fall within one of the four categories of the doctrine. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992). The Supreme Court has recognized the four categories of contra non valentum as:
1. Where some legal cause prevented the court or their officers from taking cognizance of or action on the plaintiffs action;
2. Where there was some condition coupled with a contract or connected with the proceeding which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself if his cause of action;
4. Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Plaquemines Parish Community Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054-55 (La.1987).
In the case sub judice, the portion of the contra non valentum doctrine at issue is in the third category. The third category is limited in its application to those instances involving fraudulent concealment, misrepresentation, fraud and ill practices. In re Moses, 2000-2643 (La. 2001), 788 So.2d 1173, 1179. Mr. and Mrs. Sitzman assert that Drs. Buras and Brander intentionally concealed the|sseverity of Mr. Sitzman’s condition, causing him to suffer extensive heart damage which required reconstructive surgery.
We find appellants allegations of intentional concealment without merit. It is well established in the record that both Drs. Buras and Brander informed Mr. Sitzman, via the consent form, of the risks that could occur. Further, each of the doctors attempted to repair the fistula, and subsequently referred Mr. Sitzman to a specialist when their efforts failed. Mr. Sitzman stated during his deposition that Dr. Buras informed him of the defect in the location of the tooth and that its close proximity could cause a problem in attempting the extraction of the tooth. Mr. Sitzman further confirmed he was informed by Dr. Buras that he needed to visit an ENT in order to remedy the problems that occurred from the extraction of the tooth; specifically the fistula repair and sinus drainage. Dr. Brandner also referred Mr. Sitzman to an ENT after his failed attempt to repair the fistula.
The record clearly establishes Mr. Sitz-man was aware of his condition and his need for immediate care. Neither Dr. Bu-ras nor Dr. Brander, at any time, concealed Mr. Sitzman’s condition or his need for treatment. Therefore, the third category of contra non valentum as it relates to purposeful concealment is inapplicable to the facts before this Court.
The Supreme Court’s latest pronouncement on the issue of prescription addressed the third category of contra non valentum and its applicability in a case such as Mr. Sitzman’s. “What we refer to as ‘the third category of contra non valen-tum ’ applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies.” Whitnell v. Menville, 540 So.2d 304, 308 (La.1989). The Supreme Court stated in Carter v. Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261, that “in certain circumstances, a 1qdoctor’s continuing professional relationship with his patients might give rise to the suspension or interruption of prescription.” Trainor v. Young, 561 So.2d 722, 726-27 (La.App. 2nd Cir.1990). This interruption or suspension of prescription by the continued existence of a professional relationship is based on the premise that the professional relationship is likely to hinder the patient’s inclination to sue. Id. It is the continuation of the special relationship that offers the pos *760 sibility of correction of the injury and thus may postpone the running of prescription. In re Medical Review Panel for Claim of Moses, 00-2643, p. 11 (La.5/25/01), 788 So.2d 1173, 1178-79. Therefore, as long as the patient remains in the physician’s care, she could reasonably expect a correction of the diagnosis or tortious treatment. Id.
In the case sub judice, neither Dr. Buras nor Dr. Brandner had a consistent continued relationship with Mr. Sitzman that would rise to the level of thwarting his inclination to sue. Mr. Sitzman was last seen by Dr. Buras on August 10, 1999, four years prior to this action and three years prior to his aortic valve replacement surgery. Mr. Sitzman was last seen by Dr. Brandner on September 16, 1999, for treatment of his fistula and the resulting infection. Although, Dr. Brandner did see Mr. Sitzman on June 4, 2000 for surgical clearance for his aortic valve replacement surgery, this visit was not related to the past treatment relationship between the parties. The parties’ physician-patient relationship terminated well before this action was brought and well within a reasonable time, during which Mr. Sitzman could have discovered the damage resulting from the alleged malpractice. Thus, a continuing relationship did not exist between the parties; therefore, prescription was not tolled.
|inIn the event one of the categories of the contra non valentum exception is not applicable, the one year medical malpractice prescriptive period is applied. Therefore appellant’s claims are prescribed.
DECREE
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

.The consent form entitled "Patient Consent to Medical Treatment or Surgical Procedure and Acknowledgment of Receipt of Medical Information,” signed May 14, 1999, detailed the information given to Mr. Sitzman regarding the surgery and the possible risks associated with the procedure.

. Through the testimony of Mr. Sitzman the record establishes that Mr. Sitzman’s HMO declined payment for the procedure performed by Dr. Buras, stating it was a dental problem and not covered in the policy.

. Mr. Sitzman signed a consent form with information regarding the repeat attempt at the closure of the fistula. He was asked to *757 acknowledge the receipt of information regarding the surgery that was to be performed and the possible risks of the procedure.

. On record, Mr. Sitzman had one office visit with Dr. Hebert. There is discrepancy as to any following treatment. Dr. Hebert is not a party to this action.

. Mr. Sitzman received a letter from his insurance company asserting Dr. Brandner was providing dental services which are not covered under Mr. Sitzman’s policy. Mr. Sitz-man filed an appeal that was later denied.