GUIDRY, J.
 

 |2The claimant in this medical malpractice action appeals the dismissal of her complaint on the basis of prescription. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On May 23, 2005, Dr. Janet Lewis, an orthopedic surgeon, performed total knee arthroplasty on the left knee of Emmer Williams at Lane Regional Medical Center in Baker, Louisiana. Following the surgery, complications arose that eventually resulted in Mrs. Williams’ leg being amputated below the knee on June 8, 2005. Mrs. Williams filed a claim, by a letter dated May 23, 2006, seeking the appointment of a panel to review the medical care rendered by Dr. Lewis, Dr. Greta Wilkes (as Mrs. Williams’ primary care and the admitting physician), Dr. David Depp (as the vascular consult for Mrs. Williams’ surgery), and Lane Regional Medical Center. According to the claim, Mrs. Williams alleged that following surgery, due to the delay in diagnosing the total occlusion of the popliteal artery just above her knee, her left leg was amputated below the knee.
 

 The medical malpractice compliance director for the Louisiana Patient’s Compensation Fund (PCF), Cheryl Jackson, sent a letter to counsel for Mrs. Williams on May 31, 2006, acknowledging receipt of the request for a medial review panel and notifying counsel that “a filing fee of $100 per qualified defendant is due within 45 days from the date of this notice” pursuant to La. R.S. 40:1299.47 A(1)(c). The letter further stated that failure to pay the amount due within the time allotted “shall render the request invalid and without effect and the request shall not suspend the time within which suit must be instituted.”
 
 [1]
 

 This initial claim was assigned PCF file number 2006-00700; however, the Rilling fee was not paid. By a letter dated September 5, 2006, Ms. Jackson advised counsel for Mrs. Williams that because the filing fee was not paid within the time allowed, PCF file number 2006-00700 “is no longer considered filed by this office.” Thereafter, counsel for Mrs. Williams re
 
 *28
 
 filed the claim by a letter dated September 13, 2006. In a letter dated September 27, 2006, Ms. Jackson acknowledged receipt of the claim and of a check for $400.00. The claim was assigned PCF file number 2006-01385.
 

 In response to the claim filed under PCF file number 2006-01385, Drs. Lewis and Wilkes filed a “Petition to Have Suit Number Assigned” for the purpose of being able to file a peremptory exception pleading the objection of liberative prescription in connection with the claim.
 
 [2]
 
 Pursuant to Drs. Lewis and Wilkes’ petition, the district court ordered that they be “authorized and permitted to use the processes of’ the court to file their exception and ordered that a docket number be assigned to the matter. Drs. Lewis and Wilkes then filed a peremptory exception urging the objection of liberative prescription. Peremptory exceptions on the same grounds were also filed under the same docket number by the remaining healthcare providers named in Mrs. Williams’ claim.
 

 A hearing was held on the peremptory exceptions filed by Dr. Lewis, Dr. Wilkes, and Lane Regional Medical Center, but a hearing on the peremptory exception filed by Dr. Depp was continued without date to allow him time to conduct additional discovery. The district court rendered judgment sustaining the peremptory exceptions in favor of Dr. Lewis, Dr. Wilkes and Lane Regional Medical Center and dismissed with prejudice all the claims asserted against those Rhealthcare providers by Mrs. Williams and her husband, Joseph Williams. The Williamses appeal.
 

 ASSIGNMENTS OF ERROR
 

 The Williamses contend that the judgment sustaining the peremptory exception based on the objection of prescription should be reversed as a result of the trial court making the following allegedly erroneous factual findings:
 

 1. The trial court erred in sustaining defendants’ exceptions of liberative prescription when the unequivocal evidence admitted at trial showed that the complaint was filed within one (1) year from the date of discovery of the alleged act, omission and neglect and within three years of the alleged act, omission and neglect pursuant to [La.] R.S. 9:5628.
 

 2. The trial court erred in holding that the mere fact that a patient contacts an attorney and signs an authorization for review of records, without more, triggers knowledge sufficient to commence prescription.
 

 3. The trial court erred in holding that the mere fact of a patient’s awareness of known complications arising from surgery, without more, commences prescription.
 

 DISCUSSION
 

 The primary issue, as indicated by the alleged errors assigned by the Williamses, is when did Mrs. Williams have knowledge, constructive or otherwise, of her malpractice claim sufficient to start the running of prescription. This issue arose as a result of the failure to timely pay the filing fee for the first claim filed with the PCF on May 23, 2006, under file number 2006-
 
 *29
 
 00700. As a result of that failure, the May 23, 2006 filing was rejected and deemed of no effect pursuant to La. R.S. 40:1299.47 A(l)(e), which states that failure to comply with the provision to remit the required filing fee within the forty-five day time period allowed “shall render the request for review of a malpractice claim invalid and without effect” and that “[s]uch an invalid request for review of a malpractice claim shall not suspend the time within which suit must be instituted.”
 

 The prescriptive period applicable to medical malpractice claims is provided Inin La. R.S. 9:5628 A, which states:
 

 No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
 

 Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.
 
 Campo v. Correa,
 
 01-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead.
 
 Campo,
 
 01-2707 at 12, 828 So.2d at 510-11.
 

 A plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related.
 
 Campo,
 
 01-2707 at 12, 828 So.2d at 511.
 

 The district court received evidence during the hearing on the peremptory exceptions filed by Dr. Lewis, Dr. Wilkes and Lane Regional Medical Center. When the trial court’s ruling is based on factual conclusions made after receiving evidence, the appellate court’s standard of review is manifest error.
 
 Abbott v. Louisiana State University Medical Center-Shreveport,
 
 35,693, p. 5 (La.App.2d Cir.2/27/02), 811 So.2d 1107, 1110,
 
 writ denied,
 
 02-0952 (La.5/31/02), 817 So.2d 104.
 

 Relying on the
 
 Campo
 
 case, the Williamses assert that the earliest reasonable date that Mrs. Williams could have discovered the claim for medical malpractice related to the May 23, 2005 surgery was in October 2005, when counsel received a report from a physician retained to review Mrs. Williams’ medical records. Prior to that date, the Williamses allege that they were misled into believing that no malpractice had been committed by the defendant healthcare providers, who continued to treat Mrs. Williams following the June 8, 2005 amputation.
 

 Mrs. Williams testified at the hearing on the exceptions. She stated that the only information she was told by her healthcare
 
 *30
 
 providers was that there were complications from the surgery. She stated that at no time during her treatment did she believe that any of her healthcare providers had done anything wrong, but in June 2005, she consulted an attorney because she “wanted to make sure, somebody else could examine the records, because I didn’t have access, and I didn’t know how to get them. So I wanted to find somebody to go over the records to find out if something else had went wrong.” She stated that she did not suspect that any of the doctors had committed malpractice when she consulted an attorney in June 2005. Nevertheless, despite having been told by her healthcare providers that her amputation was due to a complication of her surgery, Mrs. Williams stated, “I’m not a doctor, so I didn’t know. So I wanted to find out and get another opinion.” She testified that she first learned of the possibility that the healthcare providers had committed malpractice from her attorney in October 2005.
 

 The matter before us is distinguishable from the
 
 Campo
 
 case. The claimant in that case did not question nor suspect that malpractice had been committed until a specialist, to whom the claimant had been referred for treatment, informed the | claimant of the malpractice. Mrs. Williams, on the other hand, did question whether malpractice had been committed, as indicated by her hiring of an attorney. She was not seeking a second opinion for the purpose of treatment, like Campo, but for the purpose of verifying that she had received proper medical care.
 

 The law of prescription does not require that the patient be informed by a medical practitioner or an attorney of possible malpractice before the prescriptive period begins to run.
 
 Abbott,
 
 35,693 at 6, 811 So.2d at 1111. When a party has sufficient information to incite curiosity, or put a reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription.
 
 Abbott,
 
 35,693 at 5-6, 811 So.2d at 1110.
 

 Although Mrs. Williams insists that she did not suspect or think that her healthcare providers had committed malpractice prior to receiving information to the contrary through her attorney in October 2005, we cannot say that the district court was manifestly erroneous in finding that Mrs. Williams had knowledge sufficient to start the running of prescription on her claim for malpractice as of June 16, 2005, when she consulted with an attorney. Further, we cannot say that the district court was clearly wrong in rejecting the Williamses’ assertion that it was not until they received confirmation that medical malpractice had been committed from another healthcare provider that prescription began to run. Based on the evidence presented, the record supports the district court’s finding that Mrs. Williams should have reasonably recognized that the amputation might be treatment related as of the date she consulted with an attorney, as opposed to the later date of when her medical records were reviewed by another healthcare provider.
 
 See Guitreau v. Kucharchuk,
 
 99-2570, p. 7 (La.5/16/00), 763 So.2d 575, 580.
 

 CONCLUSION
 

 Based on the foregoing discussion, we affirm the judgment of the district |scourt finding Mrs. Williams’ medical malpractice claim dated September 13, 2006, and assigned PCF file number 2006-01385, was prescribed. All costs of this appeal are assessed to the plaintiffs, Emmer and Joseph Williams.
 

 AFFIRMED.
 

 [1]
 

 . Ms. Jackson also staled in the letter that all four medical providers named in Mrs. Williams' claim were reported as “being qualified for acts of medical malpractice under the provisions of LA R.S. 40:1299.41 et seq.,” (emphasis omitted) and thus Mrs. Williams was required to pay $400.00 as a filing fee, unless she submitted an affidavit from a physician, or a district court's in forma pauperis ruling, waiving the fee.
 

 [2]
 

 . The authority for the doctors' action is found in La. R.S. 40:1299.47 B(2)(a), which provides:
 

 A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.