STEWART, J.
|TIn this medical malpractice case, plaintiff Bobby Morgan is appealing the trial *682 court’s judgment granting defendant Ravis V. Patwardhan, M.D.’s exception of prescription, and denying his motion for a new trial. For the reasons discussed herein, we find that the defendant’s exception of prescription was properly granted and affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
On March 20, 2008, Morgan began conservative treatment with his family physician, Dr. Mike Chandler, for pain in his lower back, right buttock, and right, leg. This pain was caused by degenerative disc disease. He later underwent a series of epidural injections under the care of his pain physician, Dr. William Whyte. On referral by Dr. Whyte, Morgan sought treatment from Dr. Patwardhan. Dr. Pat-wardhan recommended a transforaminal lumbar interbody fusion to treat his pain complaints, and the procedure was performed on April 28, 2008. Morgan testified that after the procedure, he began experiencing lower back and leg pain that was worse than he had experienced before the operation. He also suffered from a weak right leg and was having trouble walking due to increased pain and weakness of the leg, which were new conditions that developed after the procedure and before he was discharged from the hospital.
Dr. Patwardhan saw Morgan on either May 13 or 14, 2008, and on June 10, 2008, for postoperative visits. During his June 10, 2008, visit, Morgan complained that his lower back pain and right leg pain was worsening. On August 19, 2008, Dr. Pat-wardhan ordered an MRI and CT scan. Dr. Patwardhan also referred Morgan back to Dr. Whyte for | ¡.additional epidural injections. Morgan’s last visit with Dr. Patwardhan occurred on August 28, 2008, during which Dr. Patwardhan informed him that “everything looks like where it’s supposed to be,” and that “he should give it a year.”
Due to worsening back and leg pain and weakness, Morgan sought a second opinion from Dr. Britain Auer on November 13, 2008. During this office visit, Dr. Auer reviewed the MRI and CT scan previously ordered by Dr. Patwardhan, suspected the source of Morgan’s pain, and ordered a CT myelogram to confirm his suspicions. On November 18, 2008, Dr. Auer and Morgan discussed the results of the CT myelo-gram, and Dr. Auer recommended removal of the hardware placed by Dr. Patwardhan and reinstrumentation. Specifically, Dr. Auer opined that the hardware installed by Dr. Patwardhan was “sitting” on a nerve and was.the cause of Morgan’s pain.
Dr. Auer suggested Morgan seek a second opinion, and referred him to Dr. Milan Mody. Morgan saw Dr. Mody on December 1, 2008, and he agreed with Dr. Auer’s findings that the hardware needed to be removed and replaced. Morgan went to see Dr. Auer again on December 3, 2008, to discuss Dr. Auer’s surgical plan, the risks associated with the surgery, the recovery period, and the chances of improvement. On December 17, 2008, Dr. Auer surgically removed the hardware placed by Dr. Patwardhan and installed new hardware.
On December 3, 2009, Morgan filed this claim against Dr. Patwardhan with the Louisiana Patient’s Compensation Fund. On | ¡¡December 10, 2010, Dr. Patwardhan filed, a peremptory exception of prescription, arguing that prescription on this claim began to run, at the latest, on August 28, 2008, which is the last day he treated Morgan. A hearing on the exception occurred on October 29, 2012. The trial court granted the exception, and set the exception for additional argument on January 23, 2013. The trial court entered *683 a judgment sustaining Dr. Patwardhan’s exception of prescription, and denied Morgan’s motion for a new trial and, alternatively, for reconsideration. It found that Morgan had sufficient constructive knowledge that he may be a victim of medical negligence when Dr. Auer advised him on November 13, 2008, that Dr. Patwardhan did not perform the April 28, 2008, surgery correctly.
Morgan appeals, raising three assignments of error.
LAW AND DISCUSSION
In Morgan’s first assignment of error, he asserts that the trial court erred in holding that he had the burden of proof regarding the issue of prescription. In his second assignment, he argues that the trial court erred in finding that he had constructive notice of his malpractice claim prior to December 3, 2008. In Morgan’s final assignment of error, he contends that the trial court erred in finding that he failed to timely submit his medical malpractice claim and that his claim had prescribed.
More specifically, Morgan contends that jurisprudence has established that the defendant bears the burden of proof on the issue of the prescription, that a review of the evidence shows that the trial court did not have a reasonable factual basis for finding that he was on notice before LDecember 3, 2008, and that the trial court erred in holding that the prescriptive period for his claim began before December 3, 2008. Since these three assignments all relate to the issue of prescription and all challenge the trial court’s determination that Morgan’s claim had prescribed, we will discuss these interrelated issues together.
A medical malpractice action must be filed within one year from the date of the alleged act, omission, or neglect or within one year from the date of discovery of the alleged act omission or neglect. La. R.S. 9:5628(A).
The one-year prescriptive period begins to run on the date that the injured party discovers or should have discovered the facts upon which a reasonable person would conclude that he had been the victim of a tort. When a party has sufficient information to incite curiosity, or put a reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription. Abbott v. Louisiana State Univ. Med. Ctr.-Shreveport, 35,693 (La. App.2d Cir.2/27/02), 811 So.2d 1107, writ denied, 2002-0952 (La.5/31/02), 817 So.2d 104; Cruse v. Louisiana State Univ., 34,-779 (La.App.2d Cir.6/20/01), 792 So.2d 798. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment, and there is no effort by the health care provider to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the cause of action is reasonably knowable to plaintiff. Failure to act by a plaintiff for more than Lone year under these circumstances is not reasonable. Abbott, supra; Harlan v. Roberts, 565 So.2d 482 (La.App. 2d Cir. 1990).
The prescriptive period in medical malpractice claims will not begin to run at the earliest possible indication that a patient may have suffered some wrong. Abbott, supra; Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575. Rather, in order for the prescriptive period to commence, the plaintiff must be able to state a cause of action-both a wrongful act and resultant damages. Id. The law of prescription does not require that the patient be informed by a medical practitioner *684 or an attorney of possible malpractice before the prescriptive period begins to run. Abbott, supra; Dixon v. Louisiana State Univ. Med. Ctr., 38,086 (La.App.2d Cir. 1/26/00), 750 So.2d 408, writ denied, 00-0627 (La.4/20/00), 760 So.2d 350.
Regarding a provision in the private medical malpractice act, La. R.S. 40:1299.47(B)(l)(a)(i), the Louisiana supreme court has ruled that a patient “must provoke a medical review panel and receive an opinion from it before he can file suit in a court of law.” Everett v. Goldman, 359 So.2d 1256 (La.1978), cited in LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226; Dixon v. Louisiana State Univ. Med. Ctr., supra. The filing of an application for a medical review panel suspends the running of prescription. La. R.S. 40:1299.39.1; Dixon, supra; Rowsey v. Jones, 26,823 (La.App.2d Cir.5/10/95), 655 So.2d 560.
A health care provider against whom a claim has been filed before a medical review panel may raise the exception of prescription in a court of | ficompetent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel. La. R.S. 40:1299.47(B)(2)(a). Holmes v. LSU/E. A Conway Med. Ctr., 43,662 (La.App.2d Cir.10/22/08), 997 So.2d 605. However, under La. R.S. 40:12.99.47(B)(2)(a) and 9:5628, health care providers are precluded from raising exceptions of vagueness and no cause of action. Holmes, supra.
The plea of prescription must be specifically pleaded, and may not be supplied by the court. La. C.C.P. art. 927(B); Holmes, supra; Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Holmes, supra; Carter, supra. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Holmes, supra; Carter, supra. Thus, a petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable actions of the patient. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502.
In the instant case, Morgan’s “petition” is not the pleading filed in the district court, but the claim letter filed with the Louisiana Patient’s Compensation Fund for the enpanelment of the medical review panel. For the purposes of allocating the burden of proof on the exception of prescription under the facts of this case, the letter requesting a medical preview panel is treated as a petition. Patin v. State, 2011-290 (La.App.3d Cir.10/5/11), 74 So.3d 1234, writ denied, 2011-2844 (La.3/2/12), 84 So.3d 533; Dixon, supra. This letter, which was filed on December 3, 2009, formally lodged his complaint against Dr. Patwardhan with the Louisiana Patient’s Compensation Fund on December 3, 2009, more than a year after the surgery performed by Dr. Patwardhan took place.
It does not appear on the face of the claim that the action has prescribed, since Morgan alleges that he was unaware of the possible act of malpractice, which he alleges occurred in April of 2008, until the alleged date of discovery, December 17, 2008. December 17, 2008, is the date that Dr. Auer performed his operation to replace the hardware Dr. Patwardhan installed, and the date that Morgan alleges that Dr. Auer discovered that Dr. Patwar-dhan had committed malpractice. Although the claim was not filed within one year of the surgery, it was filed within one year of the date of the alleged discovery. *685 Therefore, we must determine whether Morgan knew or should have known about his actionable cause prior to December 17, 2008.
During his deposition, Dr. Auer denied suggesting to Morgan that Dr. Patwar-dhan’s work was malpractice or in someway outside the standard of care, during any of his doctor’s appointments. He also denied indicating to Morgan that he should seek legal advice. Dr. Auer could not recall telling Morgan that he had been a victim of any tort. Even though Dr. Auer did not inform Morgan of possible malpractice, that does not mean that the prescriptive period did not begin to run. See Abbott, supra; Dixon, supra.
| RMorgan testified in his deposition that his back pain had grown significantly worse after the April 28, 2008, surgery, and he began to experience other problems that he did not suffer from prior to the surgery. He further stated that he discovered that he had three unexplained incisions post-surgery, instead of the two that Dr. Patwardhan informed him he would have. He also testified that after the April 28, 2008, surgery, his boss and District Attorney, Schuyler Marvin, and his wife, Kelli Morgan, suggested that he seek legal counsel. The pain was so severe that he sought a second opinion from Dr. Auer, after Dr. Patwardhan informed him that the CT and MRI showed that “everything looks like where it’s supposed to be.” Morgan explained that he sought a second opinion because he wasn’t “satisfied” with Dr. Patwardhan’s response.
Morgan’s last visit with Dr. Patwardhan occurred on August 28, 2008, and unfortunately, he did not seek a second opinion from Dr. Britain Auer until November 18, 2008. During this office visit, Dr. Auer reviewed the MRI and CT scan previously ordered by Dr. Patwardhan, suspected the source of Morgan’s pain, and ordered a CT myelogram to confirm his suspicions. On November 18, 2008, Dr. Auer recommended removal of the hardware placed by Dr. Patwardhan and reinstrumentation, after tests revealed that the hardware placed by Dr. Patwardhan was not correctly installed and was “sitting” on a nerve, causing Morgan’s severe pain. We find that Morgan’s date of discovery was November 18, 2008, at which time he either “discovered or should have discovered the facts upon which a treasonable person would conclude that he had been the victim of a tort.” See Abbott, supra; Cruse, supra.
In sustaining the exception, the trial court found that Morgan had notice when Dr. Auer identified “problems,” and reviewed the MRI and CT scan previously ordered by Dr. Patwardhan. These are the same tests that Dr. Patwardhan reviewed before telling Morgan that “everything was fine.” The trial court determined that “a reasonable person would at that point be highly suspicious that he had been lied to, and I think that would be the time that the prescriptive period had run.”
The record supports the finding that Morgan had sufficient information to incite curiosity, or enough information to put a reasonably minded person on guard and call for inquiry. See Abbott, supra; Cruse, supra. In light of Morgan’s worsening pain and additional symptoms acquired immediately after the April 28, 2008, surgery, it was not reasonable for him to wait approximately 20 months to assert his claim. Clearly, Morgan had doubts about the surgery, and his decision to set up an appointment with Dr. Auer for a second opinion confirms that fact. Since Dr. Auer’s findings directly contradicted Dr. Patwardhan’s findings, Morgan had notice of a possible malpractice action.
We conclude that Morgan’s malpractice claim related to the surgery prescribed on *686 April 28, 2009. At the very latest, the prescriptive period on Morgan’s claim commenced on November 18, 2008, the day Dr, Auer recommended corrective surgery. Therefore, Morgan had the constructive | mknowledge necessary to start the running of prescription well before December 17, 2008.
During the hearing regarding the exception of prescription, Morgan’s counsel commented that he bore the burden of proof. Since prescription was not evident in the pleadings, it is unclear why counsel made that comment. Under the facts presented, the burden of proof rested with Dr. Pat-wardhan to prove that Morgan’s claim had prescribed. Despite this error, the district court’s conclusion was correct because Dr. Patwardhan met the requisite burden of proof regarding prescription.
CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining Dr. Ravish Patwardhan’s exception of prescription is affirmed. Costs are assessed to the plaintiff, Bobby Morgan.
AFFIRMED.