998 So.2d 777 (2008)
Leslie PICKETT, et al., Plaintiffs-Appellants
v.
WILLIS-KNIGHTON PIERREMONT HEALTH CENTER, Defendant.
No. 43,692-CA.
Court of Appeal of Louisiana, Second Circuit.
November 5, 2008.
*778 Nelson & Hammons by John L. Hammons Annis C. Flournoy, Shreveport, for Appellants.
Watson, Blanche, Wilson, & Posner by Peter T. Dazzio, Baton Rouge, for Defendant, Willis-Knighton.
Pugh, Pugh & Pugh, LLC, by Robert G. Pugh, Jr., Shreveport, for Defendants, Keith Mayfield, M.D. and Max Taylor, M.D.
Pettiette, Armand, & Dunkelman by: Lawrence W. Pettiette, Jr., Joseph S. Woodley, Shreveport, for Defendants/Appellees, Debra Cline, M.D. and Louisiana Medical Mutual Ins. Co.
Before BROWN, MOORE, and LOLLEY, JJ.
BROWN, Chief Judge.
In this medical malpractice action, plaintiffs, Leslie Pickett and her husband, Richard Pickett, II, appeal the trial court's judgment granting an exception of prescription and dismissing plaintiffs' claim against Dr. Debra Cline and Louisiana Medical Mutual Insurance Company. For the following reasons, we reverse and remand.

Facts and Procedural Background
On March 12, 2001, Dr. Cline performed a transvaginal hysterectomy on Mrs. Pickett. While in her recovery room, Mrs. Pickett began experiencing difficulties. When Dr. Cline was notified of Mrs. Pickett's deteriorating condition, she responded and performed an exploratory laparotomy. During this second surgical procedure, Dr. Cline found that the suture on Mrs. Pickett's uterine artery was no longer intact, and as a result a large volume of blood had accumulated in the peritoneum. Following this second surgery, Dr. Cline informed Mrs. Pickett that the hemorrhage was a result of suture failure, possibly breakage due to a defective suture.
Mrs. Pickett and her husband hired legal counsel to investigate and pursue damages for the complications that followed her initial surgical procedure. On August 17, 2001, plaintiffs' counsel requested a narrative report from Dr. Cline regarding the cause of the events. Based upon the report of Dr. Cline, a medical malpractice claim was filed on September 21, 2001, with the Patient's Compensation Fund ("PCF"), naming only Willis-Knighton Pierremont as defendant.
Plaintiffs' claim against Willis-Knighton was heard by a medical review panel, and an opinion dated March 29, 2005, was rendered; *779 the opinion, however, was sent by certified mail to plaintiffs' attorney on July 11, 2005. In their opinion, the medical review panel found that although there was no evidence of defective sutures, the hospital was negligent through the actions and inactions of its nurses. The panel also stated that two anesthesiologists who treated Mrs. Pickett had been negligent. On March 27, 2006, plaintiffs filed a petition in district court against Willis-Knighton Pierremont and a supplemental claim with the Patient's Compensation Fund review panel naming as defendants Dr. Cline and the two anesthesiologists, Drs. Keith Mayfield and Max Taylor. Plaintiffs asserted that Dr. Cline committed negligent acts during the March 12, 2001, surgical procedure and alleged that Dr. Cline's report to counsel was an attempt to conceal her fault by claiming the sutures were defective. They also asserted negligence on the part of Drs. Mayfield and Taylor.
Dr. Cline filed a peremptory exception of prescription. The trial court granted the exception and dismissed plaintiffs' claim against Dr. Cline. It is from this judgment that plaintiffs have appealed.

Discussion
Plaintiffs contend that the trial court erred in relying on Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42, on reh'g, (07/01/08), to find that their claims against Dr. Cline were perempted. In Borel, supra, the Louisiana Supreme Court initially held that a 1987 legislative amendment to La. R.S. 9:5628(A) changed the previously recognized three-year prescriptive period to one of peremption.
In Borel, 989 So.2d at 49, the court explained:
Peremption differs from prescription in several respects. While liberative prescription merely prevents the enforcement of a right by action, it does not terminate the natural obligation; peremption, however, destroys or extinguishes the right itself. Public policy requires that rights to which peremptive periods attach are extinguished after passage of a specific period of time, and accordingly, nothing may interfere with the running of a peremptive period. The peremptive period may not be interrupted or suspended or renounced, and exceptions such as contra non valentem are not applicable. On the other hand, as an inchoate right, prescription may be renounced, interrupted, or suspended, and contra non valentem applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. (Citations omitted).
The trial court, relying on this initial opinion in Borel. granted defendant's exception of prescription; however, an application for rehearing was then pending with the Borel court. On rehearing, the supreme court found that the basis for their original holding was erroneous, and that in fact the three-year limitation period provided in La. R.S. 9:5628 is prescriptive, not peremptive. Based upon this subsequent holding, it is evident that in the present case the trial court's granting of defendant's exception was erroneous. Accordingly, it is incumbent upon us to determine whether plaintiffs' claims against Dr. Cline were filed within the applicable prescriptive period.
The burden of proving that a suit has prescribed generally rests with the party pleading prescription. However, when a plaintiff's petition facially shows that the prescriptive period has expired, the burden shifts to the plaintiff to prove that the claim has not prescribed. Collum v. E.A. Conway Medical Center, 33,528 (La.App. 2d Cir.06/21/00), 763 So.2d 808, *780 writ denied sub nom. Fay v. E.A. Conway, 00-2210 (La.10/13/00), 771 So.2d 653. In order to meet that burden, plaintiff must demonstrate either suspension, interruption, or renunciation. LeBreton v. Rabito, 97-2221 (La.07/08/98), 714 So.2d 1226; Collum, supra.
La. R.S. 9:5628(A), which sets forth the prescriptive period for medical malpractice claims, states, in pertinent part:
No action for damages for injury or death against any physician ... [or] hospital... duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Plaintiffs filed their supplemental PCF claim naming Dr. Cline as a defendant on March 27, 2005, more than five years after the alleged act of malpractice on March 12, 2001. Thus, on its face, plaintiffs' claim against Dr. Cline had prescribed; and plaintiffs must, therefore, demonstrate that their claim was either suspended, interrupted, or renunciated. In Borel, supra at 67, the Louisiana Supreme Court stated that their "holding in LeBreton clearly stands for the principle that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription, to the exclusion of the general codal articles on interruption of prescription." Thus, our analysis of whether plaintiffs met their burden of proving that their claim had not prescribed must focus on suspension, not interruption.
The Medical Malpractice Act, La. R.S. 40:1299.41, et seq., in conjunction with La. R.S. 9:5628, governs actions for medical malpractice against certain health care providers, such as defendants herein. Specifically, La. R.S. 40:1299.47(A)(2)(a), which pertains to the suspension of prescription in medical malpractice actions, provides, in pertinent part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted ... until ninety days following notification, by certified mail ... to the claimant or his attorney of the issuance of the opinion by the medical review panel.... The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review....
We note that a claim against Willis-Knighton Pierremont was timely filed with the PCF and that the Medical Review Panel did not render an opinion for almost four years.
The court in Borel, supra, stated:
During the pendency of the panel proceedings, prescription was suspended as to all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified. Plaintiffs were notified of the medical review panel decision on January 22, 2002. Thereafter, they had 90 days, plus the remainder of the one-year prescriptive period that was unused at the time the request for a medical review panel was filed (282 *781 days), or until January 29, 2003,FN13 to bring Dr. Young, who had been previously named in the medical review panel, into the suit. (Emphasis added).
FN13. In Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, we held that when the ninety-day period of suspension after the decision of the medical review panel is completed, the medical malpractice victim is entitled to the remainder of the one-year prescriptive period that was unused at the time the request for the medical review panel was filed.
Borel, 989 So.2d at 69. (Footnote 14 omitted).
Notification to a claimant or her attorney must be by certified mail. When the 90-day period of suspension following notification of the medical review panel's opinion is completed, a claimant in medical malpractice actions is entitled to the remainder of the one-year prescriptive period provided for under La. R.S. 9:5628 that was unused at the time the request for a medical review panel was filed. Borel, supra; Guitreau v. Kucharchuk, 99-2570 (La.05/16/00), 763 So.2d 575.
In the instant case, the alleged malpractice occurred on March 12, 2001. On September 21, 2001, or 194 days after the alleged malpractice, plaintiffs filed a claim with the PCF against Willis-Knighton Pierremont Health Center. The instituting of the claim with the PCF suspended the running of prescription against all joint and solidary obligors, such as Dr. Cline, for the duration of the Medical Review Panel proceedings. In addition, the Medical Malpractice Act provides for another 90-day suspensive period following notification of the Medical Review Panel's decision. The Medical Review Panel rendered its opinion on March 29, 2005, yet it did not notify plaintiffs' attorney by certified mail until July 11, 2005.[1] Then on March 27, 2006, which was 259 days after the July notification of the panel's decision, plaintiffs filed a supplemental claim with the PCF naming Dr. Cline and the two anesthesiologists as defendants.
In accordance with Borel, supra, and Guitreau, supra, we find that plaintiffs had 90 days after notification of the Medical Review Panel's opinion (July 11, 2005), plus the 171 days that remained unused in which to add any additional joint or solidary obligors. Thus, because plaintiffs filed their claim against Dr. Cline within 261 days of notification of the Medical Review Panel's opinion, their claim had not yet prescribed.
Defendant argues that because the original claim did not name Dr. Cline, plaintiffs are not entitled to add to the 90-day period. Defendant cites Guitreau, supra, in support of this argument. After a careful review of Guitreau, we disagree with defendant's contention. In fact, Guitreau gives further credence to our finding, as a defendant in that case who was not named in the original claim was added as an additional defendant nearly three years after prescription began to run and more than two years after the original claim was filed with the medical review panel.
Accordingly, we find that plaintiffs were able to demonstrate that, due to suspension of the prescriptive period, their claim against Dr. Cline was in fact timely.[2]

Conclusion
For the reasons expressed herein, we reverse the judgment of the trial court *782 granting defendant's peremptory exception of prescription and dismissing plaintiffs' claim and remand for further proceedings. Costs are assessed to Dr. Cline and Louisiana Medical Mutual Insurance Company.
MOORE, J., concurs with written reasons.
MOORE, J, concurs.
I respectfully concur. The majority's conclusion that the Picketts' suit is not prescribed appears mandated from the supreme court's second opinion in Borel v. Young, XXXX-XXXX (La.7/1/08) (on rehearing), 989 So.2d 42, and from a literal reading of the Medical Malpractice Act, La. R.S. 40:1299.47 A(2)(a). Borel ultimately reiterated that the three-year limitation of La. R.S. 9:5628 A is not peremptive but prescriptive. The Act provides that filing a request for medical review panel against any healthcare provider suspends prescription against all healthcare providers.[3] The mechanical application of these principles will support the majority's rationale that the timely request for MRP against Willis-Knighton suspended prescription for the nearly four years of MRP deliberations, and the subsequent request for MRP against Dr. Cline fell within the balance of the prescriptive period, even though it was not filed until over five years after the alleged malpractice.
The result, however, is anomalous. The court in Borel recognized that the purpose of the Act was to avoid subjecting a physician to "an indefinite period of prescription, even after a claim has been evaluated by a medical review panel" by curtailing "lengthy periods for filing malpractice suits[.]" Id., at fn. 12. In the instant case, precisely this result has occurred and the policy has been subverted. The Picketts were perfectly well aware of Dr. Cline's potential role in their harm (she was, after all, Mrs. Pickett's treating surgeon), and yet they filed a request for MRP only against the hospital, Willis-Knighton. For reasons unfathomable to this writer, the MRP sat on the matter for nearly four years before notifying the parties of its decision. The Picketts' subsequent suit against Willis-Knighton was timely under the statute, but the simultaneous request for MRP against Dr. Cline, filed over five years after Mrs. Pickett's operation, subjects Dr. Cline to precisely the kind of "indefinite period of prescription" proscribed in Borel.
This result totally explodes any vestige of the period of repose fixed by R.S. 9:5628 A. Notably, the defendant in Borel was named in the original MRP request and participated in all proceedings, and yet he was ultimately dismissed on an exception of prescription. It is absolutely incongruous that Dr. Cline, who had no part in the original MRP proceedings and was not even named until over five years after the alleged act, should be maintained in the instant action. The inequitable treatment of Dr. Cline should invite judicial reassessment and, ultimately, legislative action.
For these reasons, I reluctantly concur.
NOTES
[1] La. R.S. 40:1299.47(J) states that "[t]he chairman shall submit a copy of the panel's report to the board and all parties and attorneys by registered or certified mail within five days after the panel renders its opinion."
[2] Because we find that plaintiffs' claim against Dr. Cline was filed timely, we pretermit any discussion of the date of discovery and contra non valentem.
[3] The Act specifically suspends prescription as to "all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified," but the majority does not explain how Dr. Cline's conduct was joint or solidary with Willis-Knighton with respect to defective sutures. See Greer v. Johnson, 37,655 (La. App. 2 Cir. 9/24/03), 855 So.2d 898.